OPINION
{¶ 1} Defendant-appellant, Pavlova R. Sterry ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations granting appellant and plaintiff-appellee, Michael J. Mantle ("appellee"), a divorce from one another and dividing the parties' marital property.
 {¶ 2} The parties were married in Galloway, Ohio, on November 11, 1995, and no children were born as issue of the marriage. Appellee moved out of the marital residence in August 2000, and the parties have lived separate and apart since that time. Appellee filed his complaint for divorce on October 6, 2000. Appellant filed her counterclaim for divorce on November 29, 2000. Both parties moved the court for temporary orders. The court issued temporary orders on February 6, 2001. Therein, the court ordered appellee to pay the first and second mortgage, taxes and insurance on the marital residence, and all debts in his individual name, during the pendency of the divorce. The court ordered appellant to pay all debts in her individual name. The trial in this matter was held on December 20, 2001.
 {¶ 3} Appellant's educational background consists of a Bachelor's degree in mathematics, plus additional coursework toward a Master's degree. At the time the parties married, appellant was employed as a statistician by the Treasurer of the State of Ohio, and earned an annual salary of $27,000. In 1997, she accepted a position as an actuary with the Ohio Department of Insurance but was terminated after three months. In 1998, appellant held jobs for several months each with Mr. Mailbox and American Commerce Co., earning a total of $25,413 in that year. She continued to work at American Commerce Co. through 1999 and into 2000, but was terminated in June 2000. Her annual salary at American Commerce Co. was $29,900.
 {¶ 4} Appellant has accepted various bookkeeping assignments through a temporary employment agency since the year 2000. She earned a total of $16,451 in the year 2000, and, as of the trial date, she had earned $15,000 in the year 2001, with an average monthly gross income of $1,200. Appellant was not currently in a temporary assignment at the time of trial; she testified this was due to the temporary agency not having any assignments appropriate for her. Appellant testified she had been seeking full-time, permanent employment for over one year, but had not secured such a position as of the date of trial. She testified that her unemployed status is not caused by any physical inability to work.
 {¶ 5} Appellee's educational background consists of a high school diploma and a one-year computer programming certificate from a technical school. At the time the parties married, appellee was employed with the office of the Auditor of the State of Ohio. Since 1996, appellee had been employed with the Ohio Bureau of Workers' Compensation. His income during the years 1997 through 2001 ranged from a low of $67,155 in 1997 to a high of $84,000 in 2001. Appellee testified that, in early 2001, he accepted a voluntary demotion from a managerial position to a subordinate position due to the stress caused by the divorce.
 {¶ 6} The parties stipulated that they had always maintained separate bank accounts and credit card accounts during the marriage, and each had generally paid for their own clothing and other personal expenses. They further stipulated that appellee had always paid the mortgage, taxes and insurance on the marital residence, and the utilities. At the time of trial, appellant's individual credit card debt totaled $9,806, and appellee's individual credit card debt totaled $75,697.06. The parties stipulated that each would and should be responsible for their own credit card debt.
 {¶ 7} Both parties accumulated pension and deferred compensation benefits during the marriage. Appellant presented the expert reports of pension evaluator David I. Kelley, who conducted an analysis of the marital portion of each party's Public Employees Retirement System ("PERS") account. Mr. Kelley also testified at trial as an expert witness for appellant. Mr. Kelley testified that, as of the date of trial, the marital portion of appellee's vested PERS account, assuming annual cost-of-living adjustments ("COLA"), was $95,976.29. Mr. Kelley testified that, as of the date of trial, the marital portion of appellant's non-vested PERS account, assuming annual COLA, was $7,113.82. Mr. Kelley further testified that, as of November 1, 2000, the marital portion of appellee's PERS account, assuming annual COLA, was $73,454.63. He testified that the November 1, 2000 value of the marital portion of appellant's PERS account, assuming annual COLA, would remain unchanged at $7,113.82.
 {¶ 8} On April 18, 2002, the trial court journalized its Decision and Judgment Entry Decree of Divorce. Therein, the court made a division of the marital and non-marital property and the parties' debts, determined that spousal support was not warranted, determined that a distributive award of separate property was not warranted, and ordered that each party pay their own attorney's fees. Appellant timely appealed the trial court's judgment and presents five assignments of error as follows:
ASSIGNMENT OF ERROR NO. 1:
The trial court erred, abused its discretion and acted against the manifest weight of the evidence by establishing a de facto termination of the marriage of November 29, 2000.
ASSIGNMENT OF ERROR NO. 2:
The trial court erred, abused its discretion and acted against the manifest weight of the evidence by awarding the appellant only 30% of the marital interest in the appellee's Public Employee's [sic] Retirement System pension.
ASSIGNMENT OF ERROR NO. 3:
The trial court erred and abused its discretion by failing to allow the appellant to fully present testimony regarding the appellee's significant expenditure of funds on strippers and drugs during the marriage.
ASSIGNMENT OF ERROR NO. 4:
The trial court erred, abused its discretion and acted against the manifest weight of the evidence by failing to find that the appellee was guilty of financial misconduct and by failing to make a distributive award or unequal distribution of marital property in favor of the appellant.
ASSIGNMENT OF ERROR NO. 5:
The trial court erred, abused its discretion and acted against the manifest weight of the evidence by failing to award spousal support to the appellant.
 {¶ 9} In appellant's first assignment of error, she argues the trial court erred in finding that the duration of the marriage was from November 11, 1995 to November 29, 2000, the date appellant filed her counterclaim for divorce. Initially, we note that the determination as to when to apply a valuation date other than the actual date of divorce is within the discretion of the trial court and cannot be disturbed on appeal absent an abuse of discretion. Gullia v. Gullia (1994),93 Ohio App.3d 653. "An abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." Szymczak v. Szymczak (2000),136 Ohio App.3d 706, 713, citing Booth v. Booth (1989), 44 Ohio St.3d 142,144.
 {¶ 10} R.C. 3105.171(A)(2) provides:
"During the marriage" means whichever of the following is applicable:
(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
Thus, a trial court is permitted, in the exercise of its sound discretion, to utilize a de facto date of termination of the marriage if such is equitable in a particular case.
 {¶ 11} This court has previously provided guidance to the trial courts as to the manner of evaluating the facts of each case in order to determine whether the use of a de facto termination date is equitable. "[A]n alternative valuation date should be employed when the totality of the circumstances and equitable considerations between the parties demonstrate that there was a clear and bilateral breakdown of the marriage and the parties have ceased contributing to each other for each other's benefit as would partners in a shared enterprise or joint undertaking." Rogers v. Rogers (Sept. 2, 1997), Franklin App. No. 96APF10-1333. The court should look beyond merely the date of separation, and look at the actual nature of the parties' relationship. Id. The Supreme Court of Ohio has stated, with respect to the issue of a de facto date of termination of marriage:
The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. The public policy giving rise to equitable distribution is at least in part an acknowledgment that marriage is a shared enterprise or joint undertaking. While marriage is literally a partnership, it is a partnership in which the contributions and equities of the partners do differ from individual case to individual case. Assets acquired by the joint efforts of the parties should be, on termination, eligible for distribution. But the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review.
Berish v. Berish (1982), 69 Ohio St.2d 318, 319-320.
 {¶ 12} In assessing the appropriate date of termination of the parties' marriage, the court relied on the following evidence gleaned from the record. Appellee moved from the marital residence, without appellant's advance knowledge, in August 2000. He returned several times to collect some of his belongings. Since August 2000, the parties have maintained separate residences, bank accounts and credit card accounts. They made only one attempt at reconciliation, by attending counseling in September 2000, but this failed, and the parties did not attempt reconciliation after that time. The parties have not attended social events or vacationed together. Both parties were engaged in romantic, extramarital relationships during the pendency of the divorce proceeding. The parties were not financially intertwined, except for financial obligations imposed upon appellee pursuant to the court's temporary orders, and appellee's continued payment of medical expenses for appellant. As of November 29, 2000, the date appellant filed her counterclaim for divorce, both parties had retained counsel and affirmatively sought a divorce from the other. Relying upon this evidence, the trial court concluded that, "on November 29, 2000, the marriage of the parties was irretrievably broken and the parties ceased `to be partners in a shared enterprise or joint undertaking.' " (Decision and Judgment Entry Decree of Divorce, at 5.) (Citation omitted.)
 {¶ 13} Appellant points out that the parties had always maintained separate bank and credit card accounts, and they rarely vacationed together or attended social events together, even prior to the date of their separation. Thus, she argues, the fact that the parties maintained these distances between them after the separation does not support the trial court's finding. However, appellant offers no case law supporting the position that the court is required to engage in a side-by-side comparison of the pre-separation and post-separation arrangements of the parties. The applicable case law simply requires the trial court to consider all facts relevant to the issue of whether the parties' marriage was irretrievably broken at some point in time prior to the final hearing date.
 {¶ 14} In our view, the evidence supports the trial court's conclusion that the parties no longer contributed to each other for each other's benefit as partners, and their marriage was irretrievably broken, as of November 29, 2000. By that date, the parties resided in separate locations, had ceased pursuit of a reconciliation, and had both formally sought a legal termination of their marriage from the courts. After that date, the parties never resumed cohabitation with one another. They remained financially independent of one another, with the exception of the court's temporary orders, prescription co-payments and, according to appellant's testimony, one instance where appellee gave appellant money for an air conditioner and another where appellee gave appellant money to pay a dental bill. The parties did not vacation together or attend social outings together. Appellant sent letters to appellee's employer, family, and friends, and to Governor Bob Taft and his wife, Hope, disparaging appellant and describing the breakdown of the parties' marriage. Appellant also threatened to blow up pictures of appellee and picket in front of the building where appellee worked.
 {¶ 15} Although several initial acts appear to have been unilateral on the part of appellee, considering the totality of the circumstances, we do not find that the trial court abused its discretion in establishing a de facto termination date of November 29, 2000. Accordingly, appellant's first assignment of error is overruled.
 {¶ 16} In her second assignment of error, appellant argues that the trial court abused its discretion in awarding appellant only 30 percent of the marital portion of appellee's PERS account. Appellant argues that, even after taking into account an offset of the difference in value of the parties' other retirement accounts, appellant is entitled to 44.78 percent of the marital portion of appellee's PERS account. She argues that this percentage will result in an equal division of the parties' marital retirement assets. Appellant argues that, because the trial court failed to set forth its reasons for awarding appellant 30 percent of the marital portion of appellee's PERS account, it is unclear whether the court simply committed plain error by miscalculating the appropriate figures, or intentionally made an unequal division of marital property based on the applicable statutory factors. Appellee argues that the court was within its discretion to select a lower percentage, given the fact that the court established a de facto termination date over one year earlier than the date for which appellant provided values of the marital retirement assets (that is, the trial date of December 20, 2001).
 {¶ 17} Considerations of division of marital property begin with a view toward potentially equal division; adjustments may be made based on all relevant factors in order to reach an equitable result. R.C. 3105.171(C)(1) provides:
Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
Pursuant to R.C. 3105.171(F), in dividing marital property, the court must consider:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
(5) The economic desirability of retaining intact an asset or an interest in an asset;
(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
(9) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 18} A trial court has broad discretion in establishing an equitable division of marital property. Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401. However, in making a division of marital property, a trial court must consider all factors enumerated in R.C.3105.171(F). Casper v. DeFrancisco (Feb. 19, 2002), Franklin App. No. 01AP-604. Further, R.C. 3105.171(G) expressly provides that a trial court must make written findings of fact to support its determination. An exhaustive itemization of every factor is unnecessary; however, the court's decision must clearly indicate that the factors were considered before the property division was made. Casper, supra. A trial court's failure to consider the R.C. 3105.171(F) factors in making a division of marital property constitutes an abuse of discretion. Id.
 {¶ 19} In the instant case, the trial court failed to make clear that it considered the R.C. 3105.171(F) factors, and failed to make written findings of fact supporting its determination that appellant should be awarded 30 percent of the marital portion of appellee's PERS account. Because the trial court failed to make such written findings of fact, we are unable to determine whether the trial court inequitably distributed the marital portion of appellee's PERS account, as appellant maintains. Accordingly, appellant's second assignment of error is sustained to the extent that she seeks remand to the trial court for explanation of the factual basis for, and the effect of the applicable statutory factors upon, the court's unequal distribution of marital retirement assets.
 {¶ 20} In appellant's third assignment of error, she asserts the trial court erred in limiting her presentation of evidence. Specifically, she asserts the trial court should have allowed her to present evidence of appellee's pre-separation expenditure of funds on strippers and marijuana. She argues that the trial court's limitation on the presentation of such evidence unfairly impeded her attempt to demonstrate financial misconduct on the part of appellee, such as would warrant a distributive award or unequal distribution of marital property.
 {¶ 21} Appellant argues that the court erred in refusing to allow her to testify that she witnessed appellee smoking marijuana on a regular basis throughout the marriage. She also contends the court erred in refusing to admit into evidence photographs purporting to depict appellee using drugs. Contrary to appellant's assertions, the record reflects that the trial court not only allowed appellant to testify regarding appellee's alleged regular drug use throughout the marriage, but the court engaged in its own inquiry of appellant, during direct examination, in order to ascertain the precise time frame and frequency of occasions upon which appellant witnessed appellee using drugs. This inquiry resulted in appellant testifying that appellee used illicit drugs daily throughout the parties' five-year marriage.
 {¶ 22} The trial court thereafter allowed appellant to testify further regarding appellee's alleged drug use, and to testify that appellee kept in the marital residence at least three bags of a green, leafy substance she believed to be marijuana, and "bongs" used for smoking marijuana. Though the trial court frequently interrupted the direct examination to reiterate that appellant should confine herself to facts she knew to be true instead of what she believed to be true, the court did in fact allow the testimony regarding appellee's use of illicit drugs. Moreover, it was within the trial court's discretion to limit any cumulative testimony or testimony that was purely speculative.
 {¶ 23} For a witness's testimony to be competent, a witness must have personal knowledge of that to which he or she testifies. Evid.R. 602 and 104(A). A trial court has wide discretion in determining whether a witness is competent to testify. State v. Bradley (1989),42 Ohio St.3d 136, paragraph one of the syllabus, certiorari denied,497 U.S. 1011, 110 S.Ct. 3258. We will not disturb a trial court's discretionary decision for a mere error of law; instead, the trial court must have acted with an unreasonable, arbitrary or unconscionable attitude. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 24} We find that the trial court did not abuse its discretion in limiting appellant's testimony regarding appellee's drug use and possession. The testimony the trial court allowed in this regard consumes 11 pages of the trial transcript. It is clear from a reading thereof that appellant truly believes that appellee regularly used and kept marijuana and drug paraphernalia throughout the marriage. Unfortunately, she never testified that she is familiar, through personal experience, with the odor and appearance of marijuana, as the trial court asked her to do repeatedly. See State v. McKee (2001), 91 Ohio St.3d 292 (a lay witness may identify a controlled substance based upon knowledge and experience, such as having used the substance).
 {¶ 25} If the court had chosen to disregard appellant's testimony regarding drug use because, in its view, appellant had not laid a proper foundation so as to render her competent to testify that appellee in fact used and possessed marijuana, this was within its discretion. This is especially true given the fact that appellant testified she never actually witnessed appellee exchange marital funds for drugs. Since she never established a link between appellee's alleged drug use and dissipation of any identifiable marital assets, as she claims she had always intended to do, her testimony with respect to appellee's drug use is arguably inadmissible pursuant to Evid.R. 403. However, the trial court's judgment entry reveals that the court did not discount appellant's testimony regarding appellee's drug use. Page 16 of the judgment entry contains a lengthy and detailed summary of appellant's testimony in this regard.
 {¶ 26} Appellant also maintains the court erred in refusing to admit six photographs, identified as Exhibits P8 through P11, that she sought to have admitted as evidence of the fact that appellee used drugs during the marriage. Appellant argues that the photographs should have been admitted because she was able to identify that they accurately depicted appellee smoking marijuana. Appellant argues that the sole basis for the trial court's exclusion of the photos was that appellant did not personally take them, and this was error.
 {¶ 27} However, we note that appellant testified only as to what she believed the photographs to depict (i.e., appellee using drugs); however, she did not offer testimony as to whether the photographs accurately depicted what they purported to demonstrate, or when or where the pictures were taken. Such foundational elements are a prerequisite to admissibility. See Michigan Mut. Ins. Co. v. Ramey (June 16, 1983), Franklin App. No. 82AP-990. Because appellant failed to lay a proper foundation for Exhibits P8, P9, P10 and P11, the trial court did not abuse its discretion in excluding them.
 {¶ 28} Appellant also complains that the trial court erred in limiting appellant's cross-examination of appellee regarding his expenditures at a Columbus gentlemen's club called "Kahoots." The trial court ruled that appellant's cross-examination in this regard should be limited to pre-separation expenditures. She argues that, because there had not yet been a ruling as to the de facto date of termination, the trial court impermissibly denied appellant "the opportunity to fully litigate her case." (Brief of appellant, at 14.)
 {¶ 29} A review of the record reveals that, although the court initially ruled that cross-examination should be confined to pre-separation Kahoots expenditures, the court apparently relented. On pages 85 and 86 of the transcript the court allowed appellant's counsel to elicit from appellee that nearly all of approximately $75,000 in credit card debt was incurred at Kahoots during the year 2001. On page 87 of the transcript, appellee admitted that almost daily cash withdrawals during the months of April and May 2001, were used to patronize Kahoots. Upon a detailed review of the trial transcript, we cannot say that the trial court abused its discretion in placing any limitations upon appellant's cross-examination of appellee regarding his gentlemen's club expenditures. Having determined that the trial court did not abuse its discretion in limiting evidence designed to demonstrate financial misconduct on the part of appellee, we overrule appellant's third assignment of error.
 {¶ 30} In appellant's fourth assignment of error, she argues that the court erred in failing to determine that appellee was guilty of financial misconduct, and by failing to make a distributive award or an unequal division of marital property based upon such misconduct.
 {¶ 31} R.C. 3105.171(E)(3) provides, "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The burden of proof of financial misconduct is on the complaining spouse. Jacobs v. Jacobs, Scioto App. No. 02CA2846, 2003-Ohio-3466, at ¶ 25. The trial court has discretion in deciding whether a spouse committed financial misconduct, subject to a review of whether its determination was against the manifest weight of the evidence. Babka v. Babka (1992), 83 Ohio App.3d 428; Swartz v. Swartz (1996), 110 Ohio App.3d 218.
 {¶ 32} The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing (i.e., wrongful scienter). Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268. "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." Id. Financial misconduct involves some element of profit or interference with another's property rights. Id. An allegation of financial misconduct, unsupported by evidence of wrongdoing, will not support a dissipation award. Rinehart v. Rinehart (May 18, 1998), Gallia App. No. 96 CA 10.
 {¶ 33} This court has affirmed findings of financial misconduct in cases where a party has violated the court's restraining orders,[1]
dissipated marital assets without the knowledge or permission of the other party,[2] stolen equipment, inventory and records of the party's business so as to interfere with the continued operation of the business,[3] cashed an insurance check and used all of the money for the party's own purposes,[4] and sold stock owned by the other party, without the other party's knowledge or permission.[5]
 {¶ 34} In this case, there are no allegations that appellee personally profited from his actions or engaged in any conduct for the sole purpose of defeating his wife's interest in any property. Moreover, appellee's spending habits apparently did not affect the parties' chosen lifestyle. Appellant testified that, during the marriage, the parties rarely went out to eat or spent money on entertainment or vacations, and that they maintained their home and were able to purchase the clothing and food they needed. Appellant presented no evidence that appellee's spending adversely affected the lifestyle the parties had chosen to maintain prior to their separation.
 {¶ 35} Additionally, appellant presented no evidence linking appellee's alleged drug use with dissipation of any identifiable marital assets. She could not say she ever witnessed appellee exchange money for drugs, and she did not testify that appellee ever told her he spent marital funds on drugs. Appellee admitted on cross-examination that his bank statements indicated he withdrew hundreds of dollars within only a few days in May 2001; however, this occurred after the de facto termination date of the marriage, and appellant never presented evidence as to how these monies were ultimately spent. There was evidence upon which the trial court could have inferred that appellee spent marital funds on drugs; however, that the trial court chose not to do so was not an abuse of discretion. Appellant testified that appellee smoked marijuana daily throughout the marriage; this evidences awareness of this lifestyle, and some degree of acquiescence to it, on the part of appellant. She apparently was satisfied with the amount of marital funds being spent on a monthly basis prior to appellee's unilateral departure from the marital residence. In our view, the evidence appellant presented regarding appellee's alleged drug use does not demonstrate appellee acted wrongfully and intentionally so as to personally profit or to defeat appellant's interest in marital property.
 {¶ 36} With respect to appellee's expenditures at Kahoots, appellee testified he frequented this gentlemen's club to "escape" from his daily life. Further, appellee testified that the majority of funds he spent at Kahoots were charged to his credit cards. Appellee agreed to accept sole responsibility for the balances on his credit cards, and the trial court in fact ordered him to do so in the final decree of divorce. Thus, the trial court did not abuse its discretion in failing to conclude that appellant's interest in any marital asset to which she would otherwise have been entitled, was intentionally defeated by appellee's frequent visits to Kahoots.
 {¶ 37} Upon reviewing all of the evidence presented to the trial court, we cannot say that the trial court abused its discretion in determining that appellee did not commit financial misconduct, and in failing to make an unequal distribution of marital assets, or a distributive award of separate property. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 38} In appellant's fifth and final assignment of error, she claims the trial court abused its discretion in failing to award her spousal support. R.C. 3105.18(B) provides that, upon the request of either party, the trial court may award spousal support to that party. R.C.3105.18(C) provides:
(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
(c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
(g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable.
(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
 {¶ 39} A trial court has broad discretion to determine whether to award spousal support. Vanderpool v. Vanderpool (1997),118 Ohio App.3d 876, 879. In reaching its determination as to spousal support, the trial court must consider each factor listed in R.C. 3105.18; however, it need not list and comment upon each one. Carman v. Carman (1996), 109 Ohio App.3d 698. In the present case, the trial court expressly stated in its judgment entry that it had, "considered all the factors enumerated in R.C. 3105.18(C)(1)" and that it found that, "an award of spousal support is inappropriate and unreasonable under the facts and circumstances presented by Plaintiff and Appellant." (Judgment Entry, at 20.) There is no requirement that the court make specific findings of fact regarding its decision whether or not to award spousal support. Carman, supra. In addition, the record reveals that appellant failed to request specific findings of fact and conclusions of law regarding the court's determination, as was her right, pursuant to Civ.R. 52.
 {¶ 40} We must review the evidence adduced, in light of the applicable statutory factors, in order to determine whether the trial court abused its discretion in failing to award appellant spousal support. Subsections (f), (j), (k), (l), (m) and (n) of R.C. 3105.18(C)(1) are inapplicable because no facts were adduced bearing upon them. The trial court was required to consider the income of the parties, pursuant to R.C. 3105.18(C)(1)(a). The evidence demonstrates that the highest salaries earned by the parties during the marriage were $64,000 in 2000, in the case of appellee, and $29,900 in 1999, in the case of appellant. Accordingly, this factor weighs in favor of appellant.
 {¶ 41} With respect to the relative earning abilities of the parties, pursuant to R.C. 3105.18(C)(1)(b), no expert testimony was offered by either party. However, appellee actually earned significantly more during the marriage than did appellant, but appellant has earned a Bachelor's degree and nearly completed a Master's degree, while appellee has not attended college at all. R.C. 3105.18(C)(1)(b) does not weigh heavily in favor of either party.
 {¶ 42} Pursuant to R.C. 3105.18(C)(1)(c), the trial court was required to consider the ages and physical, mental and emotional conditions of the parties. The evidence revealed that appellee was 47 years of age at the time of trial, and appellant was 42 years of age. The only evidence adduced with respect to the physical, mental and emotional conditions of the parties was appellant's testimony that she is not physically incapable of working. Subsection (c) weighs against appellant.
 {¶ 43} Pursuant to R.C. 3105.18(C)(1)(d), the court was required to consider the retirement benefits of the parties. In its judgment entry, the court noted that appellant maintains an individual retirement account ("IRA") valued at $1,128.82 and a Roth IRA valued at $13,948.09. Mr. Kelley testified that appellant's non-vested PERS account, with COLA, was valued at $14,467.60, and that the present value at the time of trial was $13,582.99. Appellant's deferred compensation account balance, as of March 21, 2001, was $9,404.73. Mr. Kelley also testified that the actuarial present value of appellee's vested PERS account, as of the date of trial, with COLA, was $213,689.99, with $95,976.29 representing the marital portion thereof. Clearly, appellee has accumulated significantly greater retirement benefits than has appellant. However, this is not due to any particular choice the parties made during their relatively short marriage. Moreover, appellant is young and has many future working years in which to accumulate additional retirement income. Accordingly, this factor does not weigh heavily in either party's favor.
 {¶ 44} Pursuant to R.C. 3105.18(C)(1)(e), the trial court was required to consider the duration of the marriage, which in this case was almost exactly five years. This is a relatively brief marriage, and thus this factor weighs against appellant.
 {¶ 45} Pursuant to R.C. 3105.18(C)(1)(g), the trial court was required to consider the standard of living of the parties established during the marriage. Appellant testified that, for the five-year period preceding the marriage, she supported herself. Both parties stipulated that, during the marriage, the parties maintained separate finances and paid for their own clothing and other personal items, and appellee paid the expenses associated with the marital residence. Appellant testified that her lifestyle did not change significantly when she married appellee. Both parties testified that they lived modestly, and rarely vacationed or spent money on entertainment. The foregoing evidence does not demonstrate that appellant needs spousal support to maintain the standard of living the parties enjoyed during the marriage. Thus, R.C.3105.18(C)(1)(g) weighs against appellant.
 {¶ 46} The trial court was also required to consider the relative extent of education of the parties, pursuant to R.C. 3105.18(C)(1)(h). Appellant has significantly more formal education than does appellee; thus, this factor weighs against appellant.
 {¶ 47} Finally, the trial court was required to consider the relative assets and liabilities of the parties, including any court-ordered payments, pursuant to R.C. 3105.18(C)(1)(i). The record reveals that appellant left the marriage with approximately $9,000 in credit card debt, no other debts, one vehicle and some household goods. Appellee left the marriage with approximately $75,000 in credit card debt, plus a first and second mortgage. Additionally, the court awarded appellee the marital residence, valued at $92,500, as separate property, and ordered appellee to pay appellant her half of the marital equity, totaling $3,500. Appellee also was awarded one vehicle, plus household goods. In our view, R.C. 3105.18(C)(1)(i) does not weigh heavily in favor of either party.
 {¶ 48} We cannot substitute our judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64,67. Upon a review of the totality of the circumstances, in light of the relevant statutory factors, we cannot say that the trial court abused its discretion in failing to award appellant spousal support. Accordingly, we overrule appellant's fifth assignment of error.
 {¶ 49} Appellant's first, third, fourth and fifth assignments of error are overruled, appellant's second assignment of error is sustained in part and this matter is remanded to the trial court with instructions to issue a new judgment entry that clearly indicates that the trial court considered the factors contained in R.C. 3105.17(F), and includes findings of fact supporting its determination as to the percentage of the marital portion of appellee's PERS account to which appellant is entitled.
Judgment affirmed in part and remanded with instructions.
LAZARUS and WATSON, JJ., concur.
[1] Caron v. Manfresca-Caron (Nov. 20, 1997), Franklin App. No. 97APF03-438.
[2] Hoffman v. Hoffman (Aug. 11, 1994), Franklin App. No. 94APF01-48.
[3] Garish v. Garish (Mar. 10, 1998), Franklin App. No. 97APF06-813.
[4] Houck v. Houck (June 11, 1992), Franklin App. No. 91AP-1454.
[5] Corpac v. Corpac (Feb. 27, 1992), Franklin App. No. 91AP-1036.