OPINION
{¶ 1} Plaintiff-appellant, Mary Lisa Marini, appeals the judgment entry of the Trumbull County Court of Common Pleas, Domestic Relations Division, defining the duration of her marriage to defendant-appellee, Mark Marini, as being from September 28, 1985, to May 1, 2003. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Mary and Mark were married on September 28, 1985. One child was born as issue of the marriage on April 4, 1989. On February 27, 2003, Mary filed a Complaint for Divorce.
 {¶ 3} On July 21, 2004, the trial court held a hearing for the purpose of determining the termination date of the marriage. Mary testified that it was her intention to terminate the marriage at the time she filed for divorce. Mark agreed that the contention in Mary's mind was that they were no longer married after February 27, 2003. After the filing, Mary and Mark continued to reside in the marital residence. Mary and Mark eventually moved into separate bedrooms. According to Mary, this began about a month after filing for divorce. According to Mark, they ceased sharing the same bedroom about two weeks prior to filing for divorce. Mark testified that they had ceased sexual relations months prior to the filing for divorce. Mary and Mark continued to attend social gatherings together and sought counseling to repair the relationship through April 2003. According to Mark, substantive communication between Mary and him ceased four to six months after the filing for divorce.
 {¶ 4} At the beginning of May 2003, Mary and her son moved out of the marital residence and into Mary's parents' home, which is next door to the marital residence. At the invitation of Mark and/or a family priest, Father Popovich, Mary and Mark went to see Father Popovich shortly after Mary left the marital residence. This meeting was the last time Mary and Mark were together. In June 2003, Mary commenced a relationship with their son's drum teacher.
 {¶ 5} Pursuant to an order of the magistrate, Mary and Mark continued to use a joint checking account to deposit income and pay expenses. The parties also maintained a joint savings account until July 2003, when Mark closed the account and deposited the funds into a new account in his name.
 {¶ 6} Mary testified that she and Mark functioned as husband and wife until the time she left the marital residence. Mark believed the marriage was over when Mary filed for the divorce.
 {¶ 7} On December 2, 2004, the trial court issued a Judgment Entry (Findings of Fact and Orders). Pursuant to the December 2, 2004 judgment entry, the court entered a Supplemental Judgment Entry (Decree of Divorce) on January 4, 2005. Appeal was taken from this judgment on January 28, 2005, as case number 2005-T-0012.[1]
 {¶ 8} On April 15, 2005, the trial court entered a Judgment Entry (Findings of Fact and Orders) Nunc pro Tunc, which modified the December 2, 2004 Judgment Entry with respect to Mary's age and state of health. Appeal was taken from this judgment entry on May 16, 2005, as case number 2005-T-0059.
 {¶ 9} On May 31, 2005, this court consolidated appellate cases 2005-T-0012 and 2005-T-0059 for all purposes.
 {¶ 10} On appeal, Mary raises the following assignment of error: "The trial court erred in finding that the marriage terminated on May 1, 2003, instead of on the date of the final hearing, November 1, 2004."
 {¶ 11} "In any order for the division or disbursement of property * * *, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage.'" R.C.3105.171(G). The term "during the marriage" may be defined as "the period of time from the date of the marriage through the date of the final hearing" or, if the court finds the date of the final hearing inequitable, "the court may select dates that it considers equitable in determining marital property." R.C.3105.171(A)(2)(a) and (b). "Equity may occasionally require valuation as of the date of the de facto termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets." Berish v.Berish (1982), 69 Ohio St.2d 318, 320.
 {¶ 12} "The trial court is not statutorily required, by either R.C. 3105.171(A)(2)(b) or R.C. 3105.171(G), to make a factual finding to support its determination. Thus, absent a request for findings of fact and conclusions of law, we will affirm a court's use of a de facto termination date, even in the absence of an expression of its rationale, if there is any evidence in the record to support it." Harris v. Harris, 11th Dist. No. 2002 A 81, 2003-Ohio-5350, at ¶ 10 (citation omitted).
 {¶ 13} "Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, continually maintain separate residences, separate business activities and/or separate bank accounts. * * * Courts should be reluctant to use a de facto termination of marriage date solely because one spouse vacates the marital home. * * * Rather, a trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances." Id. at ¶ 11 (citations omitted). The "decision is discretionary and will not be reversed on appeal absent an abuse of discretion." Stafinsky v. Stafinsky (1996),116 Ohio App.3d 781, 785 (citation omitted).
 {¶ 14} In the present case, there was sufficient factual evidence to support the trial court's adoption of May 1, 2003, as the de facto determination date of the marriage. After this date, the parties no longer resided together, no longer attempted reconciliation, and no longer associated with each other socially or otherwise. Based on the parties' testimony, their marriage de facto terminated, at the latest, by May 1, 2003. Although the parties continued to maintain joint accounts, this was done in accordance with an order of the court.
 {¶ 15} Mary argues that using the May 1, 2003 termination date, instead of the date of the final hearing, November 1, 2004, was inequitable because the earlier date potentially prejudiced the amount of money she received in the division of marital assets. One of these assets was stock that Mark owned, which represented a 13.038% interest in Flex-Strut, Inc.[2]
Pursuant to a buy-sell agreement among the other Flex-Strut shareholders, the selling price of Mark's stock was $158,503.00 based on the stock's value in the quarter immediately preceding the May 1, 2003 termination date. According to Mary, "the value of the stock may well have increased from the May 1, 2003 valuation date until the November 1, 2004 date of the final hearing."
 {¶ 16} We reject this argument for several reasons. The argument that the value of the stock might have increased is speculative. There no evidence indicating how the value of the stock might have changed between May 2003 and November 2004. Given the record before us, it is just as likely that the value of the stock might have decreased over this period of time. Moreover, the trial court ordered that proceeds from the sale of the stock be divided evenly between Mary and Mark. Therefore, any prejudice there might have been in valuing the stock as of May 2003 would have affected Mark as much as Mary. In sum, the court's decision to use the May 2003 de facto termination date of the marriage was not arbitrary, since it was supported by the factual record. The May 2003 termination date was not inequitable, since it equally affected both parties' proceeds from the sale of Mark's stock.
 {¶ 17} Finally, we reject Mary's argument that the adoption of the de facto termination date is inequitable because Mark had engaged in an extramarital affair during the course of the marriage. Mark's infidelity is not a factor that would affect the valuation of the stock on any date.
 {¶ 18} The sole assignment of error is without merit.
O'Neill, J., O'Toole, J., concur.
[1] Since Mary filed a timely appeal of the January 4, 2005 judgment entry, we reject the argument raised by Mark in his appellate brief that Mary only appealed the April 15, 2005 nunc pro tunc judgment entry.
[2] Flex-Strut, Inc. is a closely held Ohio corporation. Mark was one of six shareholders. Flex-Strut's fair market value, as of March 31, 2003, was $1,215,615.00.