{¶ 180} I respectfully dissent. The duration of the marriage is critical in distinguishing marital, separate and post-separation assets and liabilities, and determining appropriate dates for valuation. The trial court abused its discretion in failing to find the de facto termination date of marriage to be September 2006.
 {¶ 181} "The term `during the marriage' may be defined as `the period of time from the date of the marriage through the date of the final hearing' or, if the court finds the *Page 42 
date of the final hearing inequitable, `the court may select dates that it considers equitable in determining marital property.' * * * `Equity may occasionally require valuation as of the date of the de facto
termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets.'"Marini v. Marini, 11th Dist. Nos. 2005-T-0012 and 2005-T-0059,2006-Ohio-3775, at ¶ 11, citing R.C. 3105.171(G) and (A)(2), Berish v.Berish (1982), 69 Ohio St.2d 318, 320.
 {¶ 182} "[S]everal common factors are considered in determining the propriety of declaring a de facto date of marriage termination. * * * `[F]actors such as whether the parties made a clear and bilateral decision to separate, whether the marriage was irretrievably broken at the time of separation, whether the separation was friendly, whether the parties engaged in sexual relations after the date of separation, whether either party had begun to cohabitate with another following separation, and whether the parties maintained separate financial arrangements [are] important indications of the appropriateness of applying a de facto date of termination.'" Grody v. Grody, 10th Dist. No. 07AP-690, 2008-Ohio-4682, at ¶ 9 (citation omitted). Further, a trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances. Harris v. Harris, 11th Dist. No. 2002-A-0081, 2003-Ohio-5350, at ¶ 11 (citation omitted).
 {¶ 183} In the instant case, equity requires a de facto date of termination of September 2006, not September 2007, as the trial court found. The record demonstrates that Lori Pearlstein contacted a divorce attorney in August 2006, and *Page 43 
permanently vacated the marital residence in September 2006, to move in with her paramour. She subsequently became pregnant with the child of said paramour.
 {¶ 184} Richard Pearlstein testified at the divorce proceedings that he came to the conclusion "that the marriage was irretrievably done" in "August of [20]06". He subsequently filed a counterclaim in September 2006. Further, Richard stated that since Lori moved from the marital residence, they have not had sexual relations. Moreover, after Lori moved, the parties continuously maintained separate residences. Richard additionally testified that he opened a new bank account for himself after he moved and cancelled several joint credit cards. Lori testified that she also opened a separate bank account after she moved out and borrowed money from various people, including family members, and her paramour/baby's father.
 {¶ 185} Based on the above, it is obvious that the de facto date of the parties' termination of marriage was well before the date of the final hearing, September 17, 2007. It was an abuse of discretion in not finding a de facto date of September 2006, especially seeing that the account balances on the parties' marital assets fluctuated during the time from September 2006 to 2007; it is only equitable that the parties' assets and liabilities be divided from the point when the marriage was terminated, which was undoubtedly before September 2007. Based on the above, I would reverse and remand the decision of the trial court. *Page 1