[Cite as *Rehmert v. Rehmert*, 2024-Ohio-862.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| TIMOTHY REHMERT | : | |
| | : | |
| Appellee | : | C.A. No. 29860 |
| | : | |
| v. | : | Trial Court Case No. 20DR876 |
| | : | |
| BARBARA REHMERT | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 8, 2024

. . . . . . . . . . .

BARBARA REHMERT, Pro Se Appellant

BROOKE L. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant Barbara Rehmert appeals pro se from the final judgment and decree of divorce entered by the Montgomery County Common Pleas Court, Domestic Relations Division, on June 22, 2023. For the reasons that follow, we will affirm the judgment of the trial court.

I.      Facts and Course of Proceedings

{¶ 2}  Barbara and Timothy Rehmert were married on August 4, 2006, in Sevierville, Tennessee.  They have one child together, who was born in 2012.  The parties separated in June 2020.  Timothy filed a complaint for divorce on November 24, 2020.  On December 15, 2020, the trial court granted temporary custody of the child to Barbara, awarded parenting time to Timothy, and ordered Timothy to pay temporary child support.  Barbara answered the complaint and filed a counterclaim.  Timothy then filed a reply to the counterclaim.

{¶ 3}  On February 15, 2022, Barbara filed a motion for contempt and an affidavit alleging that Timothy had failed to pay child support pursuant to the temporary orders.  Following a hearing, the court ordered Timothy to pay an additional $49 per month as a temporary child support arrearage payment and awarded attorney fees to Barbara.

{¶ 4} Barbara also filed a motion alleging financial misconduct by Timothy due to his willful concealment of "marital Bitcoin."  Barbara argued that Timothy had concealed approximately $88,299.05 worth of Bitcoin and that, coupled with his Bitcoin holdings from prior transactions, he had concealed nearly $200,000 in marital assets.  At a hearing on April 13, 2023, the parties read an agreement into the record on some issues; the trial court then heard testimony on contested issues, primarily regarding the de facto termination date of the marriage and whether Timothy had used Bitcoin to conceal marital assets.

{¶ 5} At the hearing, Timothy testified that he had moved out of the marital residence on June 24, 2020.  Timothy identified bank statements from an account he

opened in July 2020. He testified that, after separating from Barbara, he began a relationship with Angelina Barker and gave her his banking account information. He explained that Angelina had told him that she was caring for an ill aunt on behalf of her uncle and her uncle sent money to Angelina for her aunt's expenses. Timothy testified that Angelina did not have a bank account and therefore Angelina would deposit money into Timothy's account with the understanding that he would then withdraw the money and put it into a Bitcoin account for her using a Bitcoin Depot in Kettering. According to Timothy, Angelina's unemployment benefits from the State of Colorado were also deposited into his bank account.

{¶ 6} Timothy also testified that Angelina gave him cash and checks for him to put into the Bitcoin account. Timothy identified in his bank statements a check he had attempted to deposit in the amount of $8,800 which had been flagged by his bank for fraudulent activity; he stated that the bank closed his account thereafter. Timothy further testified that there were other checks he received from Angelina that he did not attempt to deposit because "they didn't look right." For example, Timothy identified a check in the amount of $7,000, made out to him from "Forecast International." Timothy never worked for or knew anything about Forecast International. He stated that he had put the check in the console of his Chevy Traverse. Timothy explained that Barbara later obtained the vehicle and found the check. He testified that he did not have access to the Bitcoin account but merely made deposits for Angelina. Timothy eventually believed that he had unwittingly engaged in fraudulent activity and he cut off all contact with Angelina. He attempted to determine the owner of the Bitcoin "wallet" into which he had made the

deposits but was unable to do so. Timothy acknowledged that he had not contacted the police. He testified that he did not list the Bitcoin account on his financial disclosure affidavit he did not consider it his money.

**{¶ 7}** Timothy presented a retirement statement with an account value of $6,926.44 as of July 1, 2020. He stated that the value at the time of the hearing was $20,000. Timothy testified that he would be comfortable using a value of $40,000 for Barbara's OPERS retirement account. Timothy asked the court to split the retirement accounts evenly.

**{¶ 8}** On cross-examination, Timothy stated that he had been unemployed in 2019 and 2020 and had received money to compensate him for lost income during the pandemic. Timothy acknowledged that he had transferred a total of $4,869 between August 14 and September 9, 2020, from the parties' joint account into his personal account. He explained that he had deposited $31,105 into the Bitcoin account from his account and also from cash that Angelina gave him to deposit. He stated that the $8,800 check was sent from Angelina's uncle for him to deposit and give to Angelina. Timothy stated that from July 17, 2020 to August 16, 2020, his and Barbara's money was in a shared account.

**{¶ 9}** Barbara testified that Timothy moved out of the marital home on June 24, 2020, following a disagreement between them that had escalated. Barbara contacted the police, who advised Timothy to leave. At that time, both parties' paychecks were being deposited into their joint account, which remained open until September 2020, when Barbara obtained an order of protection against Timothy.

{¶ 10} Barbara had been employed at Montgomery County Children's Services for 10 years.  She was not eligible for Social Security, and she testified that she wanted to keep her entire retirement account.  She stated that she had discovered Timothy's alleged financial misconduct in February 2022, when she obtained possession of Timothy's Chevy Traverse after he was arrested for a protection order violation and expired license plates; Barbara found copies of Bitcoin deposit receipts in the vehicle. She was alarmed by the amounts of the deposits (approximately $30,000), given her knowledge of Timothy's income.   Barbara believed Timothy had over $100,000 in Bitcoin funds, but she provided no proof to establish the value.   Barbara provided Bitcoin account receipts reflecting a cash value of $31,105 and 2.1376 Bitcoins.

{¶ 11} Barbara testified that she had learned in the course of the divorce that Timothy received a settlement from Worker's Compensation that he never disclosed to her.  She identified the settled claim from 2017 in the amount of $12,040.02, but no evidence was introduced that Timothy had received the money.  Barbara stated the money was never deposited in the parties' joint account.   She testified that she also had recently discovered a life insurance policy from 2008 that was never disclosed to her. The policy had a face value of death benefit coverage in the amount of $46,931.   Barbara believed that Timothy had "potentially cashed it in before he filed for divorce or after," but no evidence was introduced to support her assertion.

{¶ 12} On May 23, 2023, the court determined that July 1, 2020 was the de facto end date of the marriage; thus, the term of the marriage was from August 4, 2006, through July 1, 2020.   Based on a lack of proof, the court concluded that Barbara failed to

establish that Timothy cashed out a life insurance policy or received Worker's Compensation benefits. The court specifically found Timothy's testimony to be credible as to the Bitcoin purchases being made on behalf of Angelina and found that Timothy had no interest in the Bitcoin account. Finally, the court found that the Bitcoin account was a non-marital asset and that Barbara was not entitled to any portion of it.

{¶ 13} The court filed an amended decision on June 8, 2023, which ordered that all "retirement in existence as of July 1, 2020," which had accrued between August 4, 2006 and July 1, 2020, should be divided equally between the parties, "including any plus or minus interest, gains, or losses, associated with the balances, as of July 1, 2020."

II.     Barbara Has Not Demonstrated The Trial Court Abused Its Discretion

{¶ 14} Barbara has not set forth specific assignments of error in the "Argument" section of her pro se brief. But she asserts that the trial court abused its discretion in determining that July 1, 2020, was the de facto termination date of the marriage. She also argues that Timothy engaged in financial misconduct by 1) failing to disclose the "marital Bitcoin and retirement account," 2) defaulting on a loan for a vehicle "in an attempt to have a windfall of profit, 3) attempting to "defeat" her distribution of marital assets, and 4) depleting her financial resources by attempting to gain half of her retirement benefits. Appellant's Brief, p. 6. Barbara argues that the court failed to consider the financial misconduct statute, R.C. 3105.171(E). She also contends that Timothy failed to disclose Angelina on his witness list and that she received ineffective assistance of counsel.

{¶ 15} As we have previously noted, "[a]ny property or an interest therein that

either spouse owns when the marriage terminates is presumed to be marital property." *Maloney v. Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 20 (2d Dist.), citing R.C. 3105.171(A)(3)(a). "Marital property must be divided per R.C. 3105.171(B) and (C), unless it is one of the seven forms of separate property identified in R.C. 3105.171(A)(6)(a), which must instead be disbursed to the spouse who owns it." *Id.*, citing R.C. 3105.171(D).

{¶ 16} "A trial court may use the date of final hearing, or, if that is inequitable, another date it chooses, in determining the termination of a marriage for purposes of property division." *Nitschke v. Nitschke*, 11th Dist. Lake No. 2006-L-198, 2007-Ohio-1550, ¶ 26, citing R.C. 3105.171(A)(2)(a-b) and *Marini v. Marini*, 11th Dist. Trumbull Nos. 2005-T-0012 and 2005-T-0059, 2006-Ohio-3775, ¶ 11. "The analysis in determining a 'de facto' termination date for a marriage is, essentially, factual, and includes: (1) whether the parties separated; (2) whether they made an attempt at reconciliation; (3) whether they continually maintained separate residences; and, (4) whether they maintained separate business or financial arrangements." *Id.* at ¶ 26, citing *Marini* at ¶ 13. "An appellate court may not overturn a trial court's determination of a de facto termination date for a marriage, if there is any evidence in the record to support it." *Id.*, citing *Marini* at ¶ 12.

{¶ 17} "We review a trial court's selection of a marriage termination date under R.C. 3105.171 for an abuse of discretion." *Davis v. Davis*, 2d Dist. Clark No. 2011-CA-71, 2012-Ohio-418, ¶ 28. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community*

*Urban Redevelopment Corp.* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.*

{¶ 18} The trial court found that Barbara and Timothy had separated in June 2020, made no attempt at reconciliation after they separated, and had maintained separate residences since their separation. Further, the trial court found that, although the parties had a joint bank account for a short period of time after the separation, each party withdrew their employment earnings from that joint account and did not touch the other parties' employment earnings. Decision (May 23, 2023), p. 3. Timothy entered into a new romantic relationship in July or August 2020.

{¶ 19} We see no abuse of discretion in the trial court's determination of July 1, 2020, as the de facto termination date of the marriage. It was undisputed that Timothy moved out of the marital home on June 24, 2020, and he and Barbara maintained separate residences thereafter. Although Barbara argues in her brief that Timothy spent a night at her home in December 2020 in an attempt at reconciliation, there is no testimony in the record to support that assertion. The parties did not maintain a joint account after August or September 2020; they each maintained their own accounts. Because there was evidence to support the trial court's finding of July 1, 2020, as the de facto termination of the marriage, we will not disturb that finding.

{¶ 20} We next address Barbara's allegations of financial misconduct against Timothy. R.C. 3105.171(E), upon which Barbara relies, provides, in part:

(3) The court shall require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse.

(4) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

(5) If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses as required under division (E)(3) of this section, the court may compensate the offended spouse with a distributive award or with a greater award of marital property not to exceed three times the value of the marital property, separate property, or other assets, debts, income, or expenses that are not disclosed by the other spouse.

**{¶ 21}** " 'The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing (i.e., wrongful scienter).' " *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 18, quoting *Mantle v. Sterry*, 10th Dist. Franklin No. 02AP-286, 2003-Ohio-6058, ¶ 32. " 'Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets. * * * Financial misconduct involves some element of profit or interference with another's property rights. * * *  An allegation of financial misconduct, unsupported by evidence of wrongdoing, will not support a dissipation award.' " *Id.*, quoting *Mantle* at

¶ 32.

**{¶ 22}** "[T]he time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter." *Hammond v. Brown*, 8th Dist. Cuyahoga No. 67268, 1995 WL 546903, *3 (Sept. 14, 1995). For example, in *Babka v. Babka*, 83 Ohio App.3d 428, 615 N.E.2d 247 (9th Dist.1992), the husband liquidated a joint account just before the parties' divorce. Although he testified that he had used the funds to pay marital debts, the trial court did not believe him where he could not satisfactorily account for the funds. *Id.* at 436.

**{¶ 23}** Our standard of review is abuse of discretion, and as the complaining party, Barbara bore the burden of proof. *Hornbeck v. Hornbeck*, 2019-Ohio-2035, 136 N.E.3d 966, ¶ 81 (2d Dist.), citing *Brown v. Brown*, 2014-Ohio-2402, 14 N.E.3d 404, ¶ 14 (2d Dist.). "The court does not have to find malicious intent; it need only find 'that a spouse has engaged in knowing wrongdoing.' " *Id.*, citing *Best v. Best*, 10th Dist. Franklin No. 11AP-239, 2011-Ohio-6668, ¶ 21.

**{¶ 24}** Having heard the testimony and observed the witnesses, the court expressly found Timothy's testimony to be credible. When an appellate court reviews a trial court's judgment, it must generally defer to the fact-finder's weight of the evidence and credibility determinations. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). Timothy testified that none of the money he deposited into the Bitcoin account was his, but that it was completely provided by Angelina, with whom he later severed ties. This testimony was bolstered by his bank statements, which reflected unemployment benefits from the State of Colorado, where Timothy had never

been employed.   Timothy also lacked any access to the funds in the Bitcoin account. Based on these facts, the trial court reasonably concluded that the account was not a marital asset subject to division.   Although Barbara alleged that Timothy had cashed out the 2008 life insurance policy and had also received a Workers' Compensation settlement, she provided no documentation to support these claims.   We see no abuse of discretion in the trial court's analysis of Timothy's alleged financial misconduct.   In other words, in the absence of wrongful scienter, the trial court reasonably concluded that Timothy had not engaged in financial misconduct with respect to marital assets.

{¶ 25} The court divided the parties' retirement accounts equally.   These accounts were presumed to be marital property because they accrued during the marriage, and Barbara has not demonstrated how the division was inequitable.   There was no testimony regarding Timothy's alleged default on the Chevy Traverse.

{¶ 26} Finally, Barbara acknowledges in her brief that "ineffective assistance of counsel cannot be raised as an appealable issue."   Appellant's Brief, p. 11. Nonetheless, she contends that her attorney failed to file motions and retain a forensic accountant to help the trial court understand how Bitcoin works.   *Id.*

{¶ 27} "The Sixth Amendment to the United States Constitution provides a criminal defendant the right to effective assistance of counsel."   *Smith v. Smith*, 2d Dist. Clark No. 2005-CA-47, 2005-Ohio-6840, ¶ 56, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   "However, there is no constitutional right to be represented by counsel in a civil proceeding between individual litigants."   (Citation omitted.)   *Id.*   "The right to effective assistance of trial counsel attaches only to criminal

proceedings and to proceedings for the permanent, involuntary termination of parental rights." (Citations omitted). *Id.* Accordingly, Barbara's ineffective assistance of counsel argument is without merit.

{¶ 28} Because Barbara has not shown that the trial court abused its discretion, her arguments are overruled.

III.     Conclusion

{¶ 29} Having overruled Barbara's implicit assignment of errors, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and TUCKER, J., concur.