OPINION
{¶ 1} Appellant, Peter F. J. Beagle, appeals from a Judgment Entry/Decree of Divorce filed by the Franklin County Court of Common Pleas, Division of Domestic Relations, on May 10, 2007. For the following reasons, we affirm in part, reverse in part, and remand this matter to the trial court.
 {¶ 2} Appellant and appellee, Janice R. Beagle, were married on December 27, 1969, in Minnesota. Two children were born as issue of the marriage: Jennifer W. Beagle, born April 2, 1979 and Peter F.J. Beagle, Jr., born July 20, 1982. *Page 2 
 {¶ 3} In April 2006, appellant filed a complaint for divorce alleging incompatibility. In May 2006, appellee filed an answer and counterclaim, also alleging incompatibility.
 {¶ 4} On June 20, 2006, a magistrate of the trial court entered temporary orders concerning the debts and obligations of the parties. On November 9, 2006, appellee moved to modify the temporary orders. On November 14, 2006, appellant filed three motions for contempt, alleging that appellee failed to comply with orders of the court, including the abovementioned temporary orders. These motions were heard before the magistrate on December 11, 2006.
 {¶ 5} On February 1 and 2, 2007, the divorce proceeding was heard before the trial court. At the trial, evidence was admitted concerning the real and personal property of the parties.
 {¶ 6} On March 27, 2007, the magistrate issued an order addressing the motion for modification of temporary orders and an order addressing the contempt motions. On the same day, the trial court filed a judgment entry adopting the decision of the magistrate as to the three motions for contempt filed by appellant.
 {¶ 7} On May 10, 2007, the trial court issued its Judgment Entry/Decree of Divorce. By said entry, the trial court granted the parties a divorce on the grounds of incompatibility, divided their assets, ordered appellant to pay $24,404 to appellee in connection with its division of the assets, ordered appellee to pay $400 per month in spousal support to appellant, and ordered appellant to pay $7,862.64 of appellee's attorney fees.
 {¶ 8} Appellant appeals and sets forth the following 14 assignments of error for our review: *Page 3 
 I. THE TRIAL COURT ERRED WHEN IT FAILED TO INCLUDE THE VALUE OF [APPELLEE'S] STATE TEACHER'S RETIREMENT (STRS) IN ITS DIVISION OF MARITAL ASSETS.
 II. THE TRIAL COURT ERRED IN ITS FINAL PROPERTY DIVISION OF THE MARITAL ESTATE.
 III. THE TRIAL COURT ERRED BY FINDING THAT [APPELLANT'S] SETTLEMENT PAYMENT OF $65,000 FOR HIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS LAWSUIT AGAINST THE CITY OF HILLIARD, OHIO WAS MARITAL PROPERTY WHEN [APPELLANT] MET HIS BURDEN OF PROOF, BY A PREPONDERANCE OF THE EVIDENCE, AND TRACED THE ASSET TO SEPARATE PROPERTY.
 IV. THE TRIAL COURT ERRED BY FINDING VALUES FOR CERTAIN VEHICLES FOR WHICH THERE WAS NO TESTIMONY AS TO VALUE AND NO STIPULATION AS TO CERTAIN VEHICLES BEING ASSETS OF THE MARRIAGE.
 V. IN LIGHT OF THE TRIAL COURT'S ACCEPTANCE OF A STIPULATION OF THE VALUE OF [APPELLEE'S] STRS, THE TRIAL COURT ERRED WHEN IT PERMITTED THE [APPELLEE] TO LATER WITHDRAW HER STIPULATION.
 VI. THE TRIAL COURT ERRED IN FINDING THAT [APPELLANT] SHOULD PAY A PORTION OF [APPELLEE'S] ATTORNEY FEES.
 VII. THE TRIAL COURT ERRED WHEN IT FAILED TO FIND A VALUE TO THE FLORIDA REAL ESTATE AND INSTEAD SIMPLY ORDERED THE PROPERTY SOLD.
 VIII. THE TRIAL COURT ERRED WHEN IT PERMITTED [APPELLEE] TO SUPPLEMENT DOCUMENTATION AND EVIDENCE RESPONSIVE TO [APPELLANT'S] DISCOVERY REQUESTS AFTER THE TRIAL HAD ENDED AND AFTER [APPELLANT] HAD MADE REQUESTS FOR SUPPLE MENTATION PRIOR TO COMMENCEMENT OF TRIAL.
 IX. THE TRIAL COURT ERRED WHEN IT PERMITTED [APPELLEE] TO TESTIFY WITHOUT PROVIDING NOTICE TO [APPELLANT] AFTER [APPELLANT] HAD MADE A PROPER DISCOVERY REQUEST FOR A LIST OF *Page 4 
WITNESSES AND [APPELLEE] DID NOT DISCLOSE THAT SHE PLANNED TO TESTIFY AS A WITNESS.
 X. THE TRIAL COURT ERRED IN ITS FINDINGS OF SPOUSAL SUPPORT PAID BY [APPELLEE] TO [APPELLANT] AS TO AMOUNT AND DURATION.
 XI. THE TRIAL COURT ERRED WHEN IT FAILED TO ADDRESS [APPELLANT'S] MOTION FOR CONTEMPT AND [APPELLEE'S] MOTION FOR RULE 75 AFTER THE MOTIONS HAD BEEN FILED AND TESTIMONY HAD BEEN TAKEN REGARDING THESE ISSUE[S].
 XII. THE TRIAL COURT ERRED WHEN IT ORDERED THE DISNEY LITHOGAPHS AND STOBART ART DIVIDED BY THE PARTIES EACH HAVING A CHOICE AS TO THE PIECE HE OR SHE WANTS WHEN [APPELLEE] TESTIFIED SHE HAD NO ISSUE WITH ANY OF THE HOUSEHOLD GOODS.
 XIII. THE TRIAL COURT ERRED WHEN IT ORDERED THE OSU MEMORABILIA DIVIDED BY THE PARTIES ALTERNATING AS TO WHICH ITEMS HE OR SHE WISHED TO MAINTAIN WHEN THE [APPELLEE] TESTIFIED [APPELLANT] COULD HAVE THEM.
 XIV. THE TRIAL COURT ERRED WHEN IT DID NOT FIND LOANS FROM [APPELLANT'S] MOTHER WERE MARITAL LIABILITIES.
 {¶ 9} For ease of discussion, we will address appellant's assignments of error out of order. We will first analyze appellant's eleventh assignment of error, which alleges that the trial court erred in failing to address appellee's Civ.R. 75(N) motion to modify temporary orders and appellant's motion to hold appellee in contempt of court.
 {¶ 10} Civ.R. 53(D)(2)(a)(i) provides that "Subject to the terms of the relevant reference, a magistrate may enter orders without judicial approval if necessary to regulate the proceedings and if not dispositive of a claim or defense of a party." Thus, a magistrate is generally authorized to enter an order without judicial approval if it is *Page 5 
necessary to regulate the proceedings and if the order is not dispositive of a claim or defense of a party. See Staff Note to July 1, 2006 Amendment to Civ.R. 53; see, also, former Civ.R. 53(C)(3)(a) ("Pretrial orders. Unless otherwise specified in the order of reference, the magistrate may enter orders without judicial approval in pretrial proceedings under Civ. R. 16, in discovery proceedings under Civ R. 26 to 37, temporary restraining orders under Civ. R. 75(I), in hearings under Civ. R. 75(N), and other orders as necessary to regulate the proceedings.").
 {¶ 11} As set forth above, in June 2006, a magistrate of the trial court, pursuant to Civ.R. 75(N), entered temporary orders addressing the parties' debts and obligations while the divorce was pending. On November 9, 2006, appellee moved to modify the temporary orders, and on November 14, 2006, appellant filed three motions for contempt, alleging that appellee failed to comply with orders of the court. On March 27, 2007, the magistrate issued an order addressing the motion for modification of temporary orders and an order addressing the contempt motions.
 {¶ 12} In view of Civ.R. 53(D)(2)(a)(i), judicial approval was not necessary as to the magistrate's order concerning the modification of the temporary orders. Moreover, the trial court filed a judgment entry on March 27, 2007, adopting the decision of the magistrate as to the three motions for contempt filed by appellant. Consequently, we find that appellant is mistaken insofar as he asserts that appellee's Civ.R. 75(N) motion and his motions for contempt were not ruled upon. Additionally, we note that, under most circumstances, temporary orders in a domestic relations case merge into the final decree of divorce. SeeGarrett v. Garrett (Oct. 19, 2000), Franklin App. No. 99AP-1050, citingColom v. Colom (1979), 58 Ohio St.2d 245, which held as follows: "In a domestic *Page 6 
relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree."
 {¶ 13} Accordingly, appellant's eleventh assignment of error is overruled.
 {¶ 14} We next address appellant's eighth and ninth assignments of error. Appellant's eighth assignment of error alleges that the trial court erred in permitting appellee to supplement documentation and evidence responsive to appellant's discovery requests after the trial ended. By his ninth assignment of error, appellant argues that the trial court erred in permitting appellee to testify.
 {¶ 15} To support his eighth and ninth assignments of error, appellant generally argues that appellee did not fully cooperate during discovery, and refers this court to instances at trial when he claimed to not have received sufficient discovery responses, supplementation of discovery, and a list of witnesses, despite making requests. Additionally, appellant essentially argues that it was error for the trial court to allow appellee to provide copies of Internal Revenue Service "Form W-2"s to appellant after trial, when those forms should have been provided to him before trial. Appellant contends that appellee's failure to supplement her discovery responses hampered his ability to present his case, which ultimately led to the lack of evidence concerning the value of the marital assets.
 {¶ 16} Although appellant complained at trial regarding appellee's alleged lack of cooperation in discovery, there is no indication that he had filed a motion requesting the trial court to compel discovery pursuant to Civ.R. 37. *Page 7 
 {¶ 17} Regarding the disclosure of witnesses, appellant apparently argues that the trial court violated Loc.R. 43.04 of the Court of Common Pleas of Franklin County, which provides as follows: "Any witnesses not disclosed in compliance with this rule may not be called to testify at trial, unless the Trial Judge orders otherwise for good cause and subject to such conditions as justice requires." At trial, appellant objected to appellee testifying, arguing that he had submitted a request to appellee for a list of witnesses and appellee failed to provide a list. The trial court overruled appellant's objection and permitted appellee to testify.
 {¶ 18} Although the parties reached a few stipulations, many factual issues concerning their assets remained in dispute at trial. Given the disputed issues in this divorce proceeding, appellant reasonably could not have been surprised that appellee sought to testify. Justice compelled the trial court's decision to allow appellee to testify over appellant's objection. Thus, we cannot conclude that it was an abuse of discretion for the trial court to permit appellee to testify.
 {¶ 19} For these reasons, appellant's eighth and ninth assignments of error are overruled.
 {¶ 20} We next address appellant's third, fourth, and fourteenth assignments of error, which challenge the trial court's findings as to what constitutes marital and separate property.
 {¶ 21} Pursuant to R.C. 3105.171(B), a domestic relations court must determine what constitutes marital property and what constitutes separate property; it then must divide the marital and separate property equitably between the spouses in accordance with R.C. 3105.171. Generally, "marital property" includes all real and personal property *Page 8 
or an interest in such property owned by one or both of the spouses and "acquired by either or both of the spouses during the marriage." See R.C. 3105.171(A)(3)(a). Marital property includes the retirement benefits of the spouses. Id. "Separate property" is excluded from the definition of marital property. See R.C. 3105.171(A)(3)(b).
 {¶ 22} Appellant's third assignment of error alleges that the trial court erred by finding the $65,000 that he received from a settlement arising out of his lawsuit against the city of Hilliard, Ohio, to be marital property. Appellant argues that the $65,000 was separate property and that the money was used in the purchase of the Florida real property. Appellant contends that he met his burden of proof in demonstrating that the property constitutes separate property.
 {¶ 23} Generally, the party seeking to have property declared separate has the burden of proof by a preponderance of the evidence. SeeDunham v. Dunham, 171 Ohio App.3d 147, 2007-Ohio-1167, at ¶ 20.[1] On appeal, the trial court's determination of whether property is marital or separate property will not be overturned unless it is against the manifest weight of the evidence. Id. Therefore, this court must not reweigh the evidence but determine whether there was competent, credible evidence to support the trial court's findings. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280; Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80; Hamad v. Hamad, Franklin App. No. 06AP-516, 2007-Ohio-2239.
 {¶ 24} R.C. 3105.171(A)(6)(a) defines "separate" property to include compensation to a spouse for the spouse's personal injury, but not compensation for loss of marital *Page 9 
earnings and compensation for expenses paid from marital assets. See R.C. 3105.171(A)(6)(a)(vi).
 {¶ 25} Appellant argues that the $65,000 was compensation to him for his personal injury, i.e., for his emotional distress. Appellant testified that he received the $65,000 as settlement proceeds in connection with his intentional infliction of emotional distress claim against Hilliard. Appellant also testified that the $65,000 was used as a payment toward the purchase of the Florida real property. Aside from his own testimony, appellant did not present documentary evidence concerning his lawsuit against Hilliard. Moreover, appellee testified that she believed the $65,000 was for income replacement because appellant was making approximately $86,000 per year as the law director for Hilliard and his salary was suddenly reduced to approximately $20,000 per year.
 {¶ 26} We find that appellee's testimony supported a finding that the $65,000 was compensation to appellant for loss of marital earnings. As noted above, compensation for loss of marital earnings is not separate property pursuant to R.C. 3105.171(A)(6)(a)(vi). Thus, we conclude that the trial court's finding, that the $65,000 received by appellant in connection with his lawsuit against Hilliard was a marital asset, was supported by competent, credible evidence. Accordingly, appellant's third assignment of error is overruled.
 {¶ 27} By his fourth assignment of error, appellant argues that the trial court erroneously allocated the value of certain motor vehicles to him, for purposes of determining an equitable distribution of the marital assets, even though the vehicles are not owned by him and/or appellee. Thus, under this assignment of error, it is not appellant's contention that the vehicles were incorrectly determined to be marital or *Page 10 
separate; appellant's argument is that they were neither, and the trial court erred in finding otherwise.
 {¶ 28} The trial court awarded the 2000 Chevrolet Van and 2002 Lexus SC 430 to appellee, and the 1987 Chevrolet Corvette, 2006 Toyota Tacoma, 2004 BMW 3 Series, and pontoon boat to appellant. Appellant argues that the trial court, in its division of the marital assets, wrongly attributed the combined value of the Corvette and Tacoma to him, because, according to appellant, neither he nor appellee owned those two vehicles.
 {¶ 29} For purposes of R.C. 3105.171, the trial court has jurisdiction over all property in which one or both spouses has an interest. See R.C.3105.171(B). At issue is whether appellant had an ownership interest in the Corvette and the Tacoma. Appellant's financial disclosure affidavit, which was admitted into evidence, lists "Corvette" as one of his assets. Only one Corvette was at issue in the divorce proceedings. His financial disclosure affidavit also lists "Toyota" as one of his assets, but it does not specify the year or model. There was testimony at trial regarding a 2005 Toyota Solara and a 2006 Toyota Tacoma. Appellant testified that he gave the Corvette and Solara to his son in exchange for the BMW, which had been titled in appellant's name and given as a gift to his son. Additionally, appellant's testimony suggested that the Solara was traded in toward the purchase of the Tacoma. Furthermore, appellant testified that, when his son paid for the Tacoma, it "was supposed to be put in his name. They put it in my name." (Tr. 186.) Appellant explained that the title to the Tacoma has the name "Peter F. J. Beagle" as the owner, which is also his son's name. Appellant further explained that he and his son do not use "Junior" or "Senior" designations. Thus, appellant essentially testified that his name was wrongly placed on the certificate of title *Page 11 
for the Tacoma, but that he and his son have the same name. The trial court was left to resolve this discrepancy.
 {¶ 30} Because competent, credible evidence in the record supported a finding that the Corvette and Tacoma were owned by appellant, and therefore marital assets, we overrule appellant's fourth assignment of error.
 {¶ 31} By his fourteenth assignment of error, appellant argues that the trial court erred in not finding that the loans to him from his mother were marital liabilities. Appellant asserts that appellee proffered a stipulation that the loans from his mother were marital liabilities. Appellant specifically challenges the trial court's determination as to an alleged loan from his mother in the amount of $7,500.
 {¶ 32} At trial, appellee's counsel asked appellant whether he would be willing to stipulate to a bank overdraft liability in the amount of $7,500. Appellant indicated that he was willing to so stipulate. However, appellee stated that she was unwilling to stipulate because she was unfamiliar with the debt.
 {¶ 33} Appellant testified that $95,000 had been placed in an escrow account and the money was held in that account for approximately two and one-half years. Appellant was getting charged between $700 and $1,200 a month for the inactivity of the account. The Department of Insurance contacted appellant urging him to pay the fees. Appellant testified that he borrowed $7,500 from his mother to pay these fees. In response to appellant's testimony on this issue, appellee stated that she did not recall the transaction, and she indicated an unwillingness to stipulate to the debt to appellant's mother.
 {¶ 34} For purposes of analyzing the money given from appellant's mother to him, the issue was not whether the property was separate or marital, the issue was whether *Page 12 
the property was a loan or a gift. A trial court's determination as to whether property is a loan versus a gift, like a determination as to whether property is marital or separate, is reviewed under a manifest-weight-of-the-evidence standard. See Heyman v. Heyman, Franklin App. No. 05AP-475, 2006-Ohio-1345, at ¶ 15.
 {¶ 35} In its decision, the trial court found that appellant did not meet his burden of proof in establishing that the alleged loans were marital liabilities. The basis of this finding was the "absence of any documentation or request for repayment" by appellant's mother. (Judgment Entry/Decree of Divorce, at 10.) Although appellant testified that his mother had provided funds to him that had to be repaid, the trial court, as the trier of fact, was free to believe all, part, or none of appellant's testimony. See, e.g., Hamad, at ¶ 66. The trial court apparently did not find appellant's testimony regarding the alleged loans as credible testimony in view of the absence of additional evidence supporting his testimony on the issue. Under these circumstances, we cannot conclude that the trial court's finding that appellant failed to demonstrate that the money he received from his mother constituted a marital liability was against the manifest weight of the evidence. Consequently, we overrule appellant's fourteenth assignment of error.
 {¶ 36} Appellant's first, second, fifth, seventh, twelfth, and thirteenth assignments of error each concern the trial court's division of marital property. By his first assignment of error, appellant argues that the trial court erred in failing to assign a value to appellee's State Teachers Retirement System ("STRS") account. In his second assignment of error, appellant argues that the trial court erred in its final division of the marital property. In his fifth assignment of error, appellant argues that the trial court erred in allowing appellee to withdraw her stipulation as to the value of the STRS account. His seventh, twelfth, and *Page 13 
thirteenth assignments of error challenge the trial court's division of real estate, art, and collegiate memorabilia.
 {¶ 37} Pursuant to R.C. 3105.171(B), a trial court must divide the marital and separate property equitably between the spouses, after determining what constitutes marital and separate property. In addition, R.C. 3105.171(C)(1) provides that the court must divide the marital property equally unless an equal division would be inequitable. "[E]quitable does not necessarily mean equal." Ellars v. Ellars (1990),69 Ohio App.3d 712, 720. There is no presumption or requirement that marital property be divided equally. Booth v. Booth (1989),44 Ohio St.3d 142, 144-145; Cherry v. Cherry (1981), 66 Ohio St.2d 348. Rather, a potentially equal division is merely the starting point of the trial court's analysis before it considers other factors. Id. Ultimately, "[t]he facts and circumstances of each case dictate what is an equitable division of marital property." Apps v. Apps, Franklin App. No. 02AP-1072, 2003-Ohio-7154, at ¶ 37.
 {¶ 38} A domestic relations court enjoys broad discretion in fashioning a division of marital property, and its decision will not be reversed absent an abuse of that discretion. Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 95. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary or capricious.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. A reviewing court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131.
 {¶ 39} Under R.C. 3105.171(G), the trial court must make written findings of fact to support its determination that the marital property has been equitably divided. Galloway *Page 14 v. Khan, Franklin App. No. 06AP-140, 2006-Ohio-6637, at ¶ 8. Specifically, R.C. 3105.171(G) requires that, "[i]n any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided[.]" Therefore, although a trial court has broad discretion in deciding what division of marital property is equitable under the facts and circumstances of the case, the trial court must make findings of fact to support the division of marital property as being equitable.
 {¶ 40} In dividing marital property, the court must consider all relevant factors, including those set forth in R.C. 3105.171(F). R.C.3105.171(C)(1). The factors set forth in R.C. 3105.171(F) are as follows: (1) the duration of the marriage, (2) the assets and liabilities of the parties, (3) the desirability of awarding the marital home to the spouse with custody of the children, (4) the liquidity of the property to be distributed, (5) the economic desirability of retaining intact an asset or an interest in an asset, (6) the tax consequences of the property division, (7) the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property, (8) any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses, and (9) any other factor that the court expressly finds to be relevant and equitable. An exhaustive itemization by the trial court of every factor set forth in R.C. 3105.171(F) is unnecessary; however, the court's decision must clearly indicate that the factors were considered before the property division was made. Hightower v. Hightower, Franklin App. No. 02AP-37, 2002-Ohio-5488, at ¶ 21, citing Casper v.DeFrancisco (Feb. 19, 2002), Franklin App. No. 01AP-604. *Page 15 
 {¶ 41} In order to make an equitable division of property, a trial court should first determine the value of marital assets.Casper, citing Eisler v. Eisler (1985), 24 Ohio App.3d 151, 152;Richardson v. Richardson, Franklin App. No. 01AP-1236, 2002-Ohio-4390, at ¶ 45. Although the trial court has broad discretion to determine the value of marital property, the court "`is not privileged to omit valuation altogether.'" Casper, quoting Willis v. Willis (1984),19 Ohio App.3d 45, 48. Moreover, "`A party's failure to put on any evidence does not permit assigning an unknown as value. The court itself should instruct the parties to submit evidence on the matter.'"Richardson, at ¶ 45, quoting Willis, at 48. As a general rule, a trial court's failure to value the marital property constitutes an abuse of discretion. Hightower, supra, at ¶ 22. However, there are circumstances when a trial court does not abuse its discretion when it does not value certain marital property. For example, it has been stated that even though "the trial court is required to consider the value of the parties' major assets * * * the trial court cannot be expected to place a value on each individual item of personal property owned by the parties." McCloud v. McCloud (Dec. 23, 2005), Fulton App. No. F-05-006, citing Zona v. Zona, Medina App. No. 05CA0007-M, 2005-Ohio-5194, at ¶ 5, citing Kohler v. Kohler (Aug. 14, 1996), Loraine App. No. 96CA006313. Furthermore, it is not an abuse of discretion for a trial court to order the sale of a property, without making a finding of value, when a minimum price is set for the sale, and the sale proceeds are equally divided. Eddy v. Eddy, Washington App. No. 01CA20, 2002-Ohio-4345, at ¶ 40.
 {¶ 42} In its decision, the trial court stated that the "division of assets, while not precisely equal, is equitable." (Judgment Entry/Decree of Divorce, at 18.) The court divided many, but not all, of the parties' marital assets pursuant to a spreadsheet, *Page 16 
"Decree Exhibit A," which was attached to, and incorporated into, the decision. Decree Exhibit A lists various marital assets of the parties, the assigned value of each of those assets, and to whom the asset was awarded. The listed assets are grouped into categories, which includes a category for "RETIREMENT INTERESTS (other than STRS and PERS)." Decree Exhibit A totals the value of the listed assets awarded to appellant and appellee. As to the listed assets on Decree Exhibit A, appellant was awarded a total of $267,822 worth of assets, and appellee was awarded $219,014 worth of assets. The trial court ordered "[a]n equalizing payment in the amount of $24,404" from appellant to appellee. Id. Only considering the assets in Decree Exhibit A, a payment from appellant to appellee does "equalize" the assigned value of the parties' assets at $243,418. However, the spreadsheet does not list all of the marital assets divided by the trial court.
 {¶ 43} In addition to the retirement assets listed on Decree Exhibit A, the trial court awarded to appellee her STRS account, with appellant retaining a reversionary interest. The trial court also awarded to appellant his entire interest in his Public Employees Retirement System ("PERS") account.
 {¶ 44} Initially, the parties stipulated to the value of appellant's STRS account. Appellee's counsel stipulated at trial to the fact that the value of appellee's STRS account, as determined by the experts retained by appellee, "QDRO Consultants," was approximately $1,065,000. However, appellant would not stipulate to the value of his PERS account. Appellant stated that he would not stipulate to the value of his PERS account because he was currently receiving PERS disability. Appellant also would not stipulate to the reports of the valuation experts concerning the retirement accounts. Appellee's counsel informed the court that, if ordered, valuation evidence would be *Page 17 
offered concerning the valuation of certain assets. The court ruled that it was not going to allow the expert's reports concerning valuation of the retirement accounts. At that point, appellee sought to withdraw the stipulation as to the value of her STRS account. Appellant argued that the stipulation could not be withdrawn. The court permitted the stipulation to be withdrawn.
 {¶ 45} Stipulations are a way to obviate the need for the production of evidence as to a particular issue. Marysville Newspapers, Inc. v.Delaware Gazette Co., Inc., Union App. No. 14-06-34, 2007-Ohio-4365, at ¶ 35. A stipulation cannot be withdrawn without the consent of the other party, or by leave of court upon good cause. DeStephen v. Allstate Ins.Co., Franklin App. No. 01AP-1071, 2002-Ohio-2091, at ¶ 17, citing In theMatter of Body (June 23, 1998), Coshocton App. No. 97 CA 33. Whether to grant or deny a request to withdraw a stipulation is within the broad discretion of the trial court. Kinback v. Herstine, Stark App. No. 2006 CA 00078, 2007-Ohio-926, at ¶ 9, citing Morris v. Continental Ins.Cos. (1991), 71 Ohio App.3d 581, 589.
 {¶ 46} At trial, it became clear that appellant would not stipulate to the value of his PERS account, even though he agreed to stipulate to the value of appellee's STRS account, as determined by the QDRO Consultants. Although appellee did not condition her stipulation to the value of her STRS account on appellant agreeing to similarly stipulate to the value of his PERS account, it was not unreasonable for the trial court to allow the withdrawal of the stipulation as to the value of appellee's retirement account, when appellant would not agree to stipulate to the value of his retirement account. Therefore, under the facts and circumstances of this case, we conclude that the trial court *Page 18 
did not abuse its discretion in permitting the withdrawal of the stipulation as to the value of appellee's STRS account. Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 47} Although an expert did not testify at trial regarding the value of appellee's STRS account, and the trial court permitted the withdrawal of the stipulation as to the value of that account, both appellant and appellee testified that an outside party retained by appellee had valued the asset at over $1,000,000. There is no dispute in this case as to whether appellee's STRS account is a marital asset. Furthermore, as noted above, a trial court generally must assign and consider the values of marital assets in order to equitably divide those assets. SeeHightower, supra. In this case, the trial court did not assign a value to appellee's STRS account, but it did identify appellee's monthly STRS benefit within the context of analyzing whether spousal support is warranted.
 {¶ 48} Appellant argues that the trial court committed reversible error because it failed to include a value for appellee's STRS account in its division of the marital assets. Appellee does not contend that it was unnecessary for the trial court to value the STRS account. Instead, appellee argues that the trial court had discretion as to how to value the STRS account and that it did place a value on the account when it noted appellee's monthly STRS benefit.
 {¶ 49} Contrary to appellee's suggestion, we find that the trial court's notation of the monthly STRS benefit, in the context of analyzing whether spousal support is appropriate, does not constitute a valuation of the retirement account for purposes of the division of the martial assets. The STRS account is a major asset that will provide a monthly benefit to appellee for the rest of her life. However, noting the monthly benefit *Page 19 
derived from an asset does not constitute a valuation of the asset, even though the amount of the benefit would be a significant factor in determining the value of the asset.
 {¶ 50} Although it was within the trial court's discretion to allow the withdrawal of the stipulation, as determined above, the trial court should have instructed the parties to provide evidence as to that issue. Specifically, to the extent the evidence regarding the value of the STRS account was deficient, the trial court should have instructed the parties to provide additional evidence on the matter. SeeRichardson, supra.
 {¶ 51} Accordingly, we conclude that the trial court abused its discretion in its division of the marital assets when it awarded appellee's STRS account to her, with appellant retaining a reversionary interest, without first assigning a value to that account.
 {¶ 52} Additionally, we find that the division of the marital property does not appear on the face of the record to be equitable considering the testimony that the STRS account had been valued at over $1,000,000. Although appellant retained a reversionary interest in the STRS account, and he was awarded his PERS account in its entirety, those assets would not reasonably offset the value of appellant's interest in the STRS account. At the time of trial, appellee was 60 years old, and her monthly STRS benefit was only approximately 6.2% less than what it would have been had appellant not retained a reversionary interest. The record indicates that appellee had over 30 years of credit in STRS and appellant, who was 57 at the time of trial, had between 13 and 14 years of credit in PERS.
 {¶ 53} Considering the foregoing, this matter must be remanded to the trial court for it to divide the marital property in accordance with applicable law, which would include assigning a value to the STRS account in that division. *Page 20 
 {¶ 54} Under appellant's second assignment of error, he argues that the trial court erroneously failed to value other assets, namely, the South Yearling Road property ("South Yearling property"), Merritt Island, Florida property ("Merritt Island property"), the Walt Disney World Resort timeshares, and the household goods and furnishings. Appellant's seventh assignment of error also alleges that the trial court erred in failing to assign a value to the Merritt Island property and the South Yearling property. Because this matter must be remanded for the trial court to reexamine the division of the marital property and because the trial court's determination on remand as to the division of the STRS account may affect its division of the remaining marital assets, we do not reach these additional arguments. See Hasselback v.Hasselback, Franklin App. No. 06AP-776, 2007-Ohio-762, at ¶ 17
(essentially noting that the division of particular marital assets does not occur in isolation but necessarily within the context of the equitable division of all the parties' marital assets).
 {¶ 55} Based on the foregoing, appellant's first assignment of error is sustained, his second assignment of error is sustained in part, and rendered moot in part, and his seventh assignment of error is rendered moot.
 {¶ 56} By his twelfth and thirteenth assignments of error, appellant argues that the trial court erred in ordering the Disney lithographs, Stobart art, and Ohio State memorabilia divided between the parties by alternating succession, when appellee testified that she had no issue with appellant getting those items. Appellant asserts that appellee testified that he could have these items, and, therefore, the trial court's decision is against the manifest weight of the evidence. Appellant essentially argues that the trial court was required to award the abovementioned lithographs, art, and memorabilia to *Page 21 
him. Even though appellee testified that it was okay with her if appellant got the Ohio State memorabilia and the household goods, the trial court retained discretion as to the division of the marital assets. In other words, appellee's testimony regarding those assets did not eliminate that discretion. Accordingly, to the extent appellant's twelfth and thirteenth assignments of error allege to the contrary, they are overruled.
 {¶ 57} Lastly, we address appellant's sixth and tenth assignments of error, which challenge the trial court's award of spousal support and attorney's fees. Appellant alleges in his sixth assignment of error that the trial court erred in ordering him to pay one-half of appellee's attorney's fees. R.C. 3105.73 governs the awarding of attorney's fees and litigation expenses in domestic relations cases and provides, in pertinent part, as follows: "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." R.C. 3105.73(A). A party is not entitled to attorney's fees; rather, the trial court decides on a case-by-case basis whether awarding attorney fees would be equitable. Hamad, supra, at ¶ 71, citing Ockunzzi v. Ockunzzi, Cuyahoga App. No. 86785,2006-Ohio-5741. In assessing whether an award is equitable "`the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.'" Id., quoting R.C.3105.73(A).
 {¶ 58} Appellant's tenth assignment of error alleges that the trial court erred in the amount of spousal support it awarded and the duration of the spousal support. In this case, the trial court ordered appellee to pay appellant $400 per month in spousal support until appellant reaches the age of 62 years, upon the death of either party, upon the remarriage of appellant, or if the proceeds from the sale of the South Yearling property *Page 22 
pays off the line of credit on the Merritt Island property, which would leave appellant with no mortgage or lease expense pending the sale of the Merritt Island property. R.C. 3105.18(B) requires the trial court to divide marital and separate property pursuant to R.C. 3105.171 before it may consider the issue of spousal support. Likewise, R.C. 3105.171(C)(3) provides that the court shall provide for the equitable division of marital property under R.C. 3105.171 prior to making any award of spousal support to either spouse under R.C. 3105.18 and without regard to any spousal support so awarded. Also, in determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms of payment, and duration of spousal support, a trial court must consider all of the factors set forth in R.C. 3105.18(C)(1), which include the relative assets and liabilities of the parties and the income of the parties from all sources, including income derived from property divided, disbursed, or distributed under R.C. 3105.171.
 {¶ 59} Because this matter must be remanded to the trial court on the issue of the division of the marital property, and the trial court's determinations on remand concerning the division of marital property may affect its resolution of the issues of attorney's fees and spousal support, we decline to address the issue of attorney's fees and spousal support in this appeal. See Hasselback, supra, at ¶ 17. Thus, considering our disposition of appellant's first and second assignments of error, his sixth and tenth assignments of error are rendered moot.
 {¶ 60} For the foregoing reasons, appellant's first assignment of error is sustained; his second assignment of error is sustained in part, and rendered moot in part; his third, fourth, fifth, eighth, ninth, eleventh, twelfth, thirteenth and fourteenth assignments of error *Page 23 
are overruled; and his sixth, seventh and tenth assignments of error are moot. Accordingly, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
KLATT and SADLER, JJ., concur.
[1] If the party seeks to demonstrate that a gift of any real or personal property or of an interest in real or personal property made after the date of the marriage is separate property, he or she must prove by clear and convincing evidence that the property or interest was given to only one spouse. See R.C. 3105.171(A)(6)(a)(vii). *Page 1