[Cite as *Palmieri v. Palmieri*, 2024-Ohio-2720.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Sharon M. Palmieri,                     :

        Plaintiff-Appellant/          :
        Cross-Appellee,

                                      :          No. 21AP-146
v.                                                 (C.P.C. No. 20DR-220)

                                      :
Robert D. Palmieri,                                (REGULAR CALENDAR)

                                      :
        Defendant-Appellee/
        Cross-Appellant.              :

---

D E C I S I O N

Rendered on July 18, 2024

---

**On brief:** *Sharon M. Palmieri*, pro se.

**On brief:** *Trolinger Law Offices, LLC*, and *Christopher L. Trolinger*, for appellee/cross-appellant.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BEATTY BLUNT, J.

{¶ 1} Defendant-appellee/cross-appellant, Robert D. Palmieri appeals from the March 19, 2021 judgment and decree of divorce of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce and terminating his marriage to plaintiff-appellant/cross-appellee, Sharon M. Palmieri. For the reasons that follow, we affirm in part, reverse in part, and remand this matter to the trial court.

## I. Facts and Procedural History

{¶ 2} We begin with a brief procedural history of this matter to explain its current posture. On April 9, 2021, Sharon M. Palmieri ("Sharon") appealed from the March 19, 2021 decree of divorce, and Robert D. Palmieri ("Robert") cross-appealed. The case was

referred to mediation, the first session of which occurred on May 20, 2021. Additional mediation sessions were held throughout the summer of 2021, and several joint motions for extensions of time in which to begin briefing were granted due to the ongoing settlement discussions. Unfortunately, settlement negotiations apparently broke down, and on September 13, 2021, Sharon filed a motion to extend time to submit her appellate brief, stating that "[o]missions, ambiguous orders, and additional information obtained by the Appellant/Cross-Appellee after the testimony was presented and Decree of Divorce was issued by the trial court, warrants the filing to relieve her from the Judgment pursuant to Civil Rule 60(B). A Motion for Relief pursuant to Civil Rule 60(B) is being filed in the trial court forthwith." (Sept. 13, 2021 Appellant's Mot. to Extend Time to Submit Appellate Briefs at 1-2.)

{¶ 3} On September 14, 2021, this court granted appellant's motion to extend time to submit appellate briefs and entered an order indefinitely staying the case and remanding it to the trial court for a ruling on Sharon's Civ.R. 60(B) motion. (Sept. 14, 2021 Journal Entry.) Ultimately, the trial court denied the Civ.R. 60(B) motion, and this court reactivated the appeal.

{¶ 4} Upon reactivation of the appeal, Sharon failed to file an appellate brief. Robert, on the other hand, had already filed his merit brief on September 13, 2021, which was the day before this court stayed the case pending remand on the 60(B) motion for relief from judgment. On November 1, 2023, pursuant to App.R. 18(C), we dismissed Sharon's appeal for failure to timely file a brief. (Nov. 1, 2023 Journal Entry.) Thus, only Robert's cross-appeal remains pending in this matter.

{¶ 5} The parties were married on July 30, 1988. Three children were born of the marriage, but all were emancipated at the time of the filing of the complaint for divorce on January 17, 2020. The parties have kept separate finances since 2001, maintained separate bedrooms, did not vacation together, and lived separate lives for several years. At the time of the filing of the complaint, Robert was 68 and Sharon was 58.

{¶ 6} The parties sold the marital residence on September 14, 2020 and received $42,351.78 in net proceeds from the sale. Each party received $10,000.00 and the remaining balance of $22,351.78 was retained in the IOLTA account of counsel for Robert.

The parties moved from the marital residence on or about September 30, 2020. The parties stipulated, and the trial court found, that the parties separated on that same day.

{¶ 7} The parties had acquired a great deal of personal property during the 27 years in their house. Months prior to the move, the parties were packing things up and placing them in storage units and PODS, which are mobile storage devices. The parties had four storage units with each party having two, and three PODS. One POD was Sharon's, and two PODS were Robert's. The parties stipulated that Sharon was awarded her personal property in her custody and control free and clear of all claims of Robert. The parties further waived the right to have the trial court value this particular property for purposes of distribution.

{¶ 8} Robert worked for Lucent Technologies ("Lucent") for 28 years, until 2001 when the company went out of business. Robert has a pension from Lucent which pays $2,200 per month, pre-tax. At the time of the trial, Robert was employed with Defense Finance Accounting Services ("DFAS") and earned approximately $92,000 per year. Sharon has a college degree but at the time of the trial was working part-time at a Kroger store. The trial court found Sharon had the education and work experience to earn more than $12 per hour working as a stocker and cashier and imputed her income to $40,000 based on her work experience, education, health and past earning ability.

{¶ 9} At the time of the trial, Robert had approximately $38,000 in debt that had accumulated during the course of the marriage, including a balance on a Chase credit card. The trial court found all of the debt was marital in nature but ordered Robert to pay all of it. The judgment entry and decree of divorce fails, however, to list the Chase credit card debt which was submitted into evidence as Exhibit C. Sharon did not provide any evidence of any debt that she had in her name.

{¶ 10} Robert timely appealed to this court from the March 19, 2021 judgment entry and decree of divorce and it is now before us.

## II. Assignments of Error

{¶ 11} Robert asserts the following six assignments of error for our review:

> [1.]    THE TRIAL COURT ERRED IN FAILING TO
>         EQUALLY AND/OR EQUITABLY DIVIDE THE
>         PARTIES' MARITAL DEBT AS IT RELATES TO THE

DIVISION OF ASSETS AND LIABILITIES OF THE PARTIES AND FAILED TO ALLOCATE THE CHASE DEBT.

[2.] THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO MAKE ADEQUATE FINDINGS AND CONCLUSION OR INDICATE ANY CONSIDERATION OF THE FACTORS CONTAINED IN R.C. § 3105.171(F) AS IT RELATES TO THE ALLOCATION OF MARITAL DEBT.

[3.] THE TRIAL COURT ERRED IN ALLOCATING ALL PERSONAL PROPERTY LOCATED IN PODS AND STORAGE UNITS TO APPELLANT AND CROSS-APPELLEE WIFE CONTRARY TO THE IN COURT STIPULATION.

[4.] THE TRIAL COURT ERRED IN FINDING THAT ALL RETIREMENT ACCOUNTS ACCUMULATED DURING THE MARRIAGE AS THE LUCENT TECHNOLOGIES PENSION CONTAINED SEPARATE PROPERTY AND SHOULD BE DIVIDED UTILIZING A COVERTURE FRACTION.

[5.] THE TRIAL COURT ERRED IN FAILING TO ESTABLISH A DE FACTO TERMINATION DATE OF MARRIAGE OF SEPTEMBER 30, 2020 FOR PURPOSES OF PROPERTY DIVISION.

[6.] THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE PARTIES STIPULATED THAT THE APPRAISAL AND PROOF OF VALUE WOULD BE WAIVED AND PROPERTY WOULD BE ON THE BALANCE SHEET WITHOUT A SPECIFIED VALUE; THAT THE PARTIES AGREED THAT THE PROPERTY DIVISION SET FORTH HEREIN IS EQUITALBE (sic) AND WAIVE THEIR RIGHTS TO WRITTEN FINDINGS OF FACT; AND THAT THE PARTIES AGREED THAT THE DISTRIBUTION OF PERSONAL PROPERTY, WHILE IF NOT PRECISLY EQUAL, IS IN FACT EQUITABLE AND IN ACCORD WITH THEIR AGREED STIPULATION.

**III. Discussion**

**A. Standard of Review**

{¶ 12} "When reviewing the propriety of a trial court's determination in a domestic relations case, an abuse of discretion standard is used." *Taylor v. Taylor*, 10th Dist. No. 17AP-763, 2018-Ohio-2530, ¶ 5, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). This standard has been applied in cases concerning orders relating to alimony; the division of martial property; child custody; and child support. (Internal citations omitted.) *Id.*

{¶ 13} A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 35. The term abuse of discretion, " ' commonly employed to justify an interference by a higher court with *the exercise of discretionary power* by a lower court, implies *not merely error of judgment*, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " (Emphasis sic.) *Id.*, quoting *Black's Law Dictionary* 11 (2d Ed.1910). Thus, "a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." *Taylor*, 2018-Ohio-2530 at ¶ 5, quoting *Booth* at 144. This principle will guide our review of Robert's assignments of error, to which we now turn.

**B. Assignments of Error One and Two**

{¶ 14} Assignments of error one and two both pertain to the trial court's division of the parties' marital debt, and we therefore address them together. In his first assignment of error, Robert asserts the trial court erred in failing to equally and/or equitably divide the parties' marital debt as it relates to the division of assets and liabilities of the parties and failed to allocate the Chase credit card debt. In his second assignment of error, Robert asserts the trial court erred in failing to make adequate findings and conclusion or indicate any consideration of the factors contained in R.C. 3105.171(F) as it relates to the allocation of marital debt. We find both assignments of error have merit.

{¶ 15} In a divorce proceeding, the domestic court has broad discretion to make divisions of property. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1998), citing *Berish v. Berish*, 69 Ohio St.2d 318 (1982). "In any divorce action, the starting point for a trial court's analysis is an equal division of marital assets." *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5, citing R.C. 3105.171(C), and *Cherry v. Cherry*, 66 Ohio St.2d

348, 355 (1981). However, R.C. 3105.171(C)(1) provides that if an equal division would be inequitable, the court must divide the property equitably between the spouses.

{¶ 16} A trial court must consider the factors set forth in R.C. 3105.171(F) to ensure an equitable division of marital property. *Neville* at ¶ 5. While the trial court need not itemize every factor set forth in R.C. 3105.171(F), the court's decision must clearly indicate that the factors were considered before the property division was made. *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 40, citing *Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 21, citing *Casper v. DeFrancisco*, 10th Dist. No. 01AP-604, 2002 Ohio App. LEXIS 606. Additionally, a trial court must evaluate all relevant facts in determining an equitable division. *Cherry* at 355. Further, pursuant to R.C. 3105.171(G), a trial court must make written findings of fact that support the determination that marital property has been equitably divided. *Beagle* at ¶ 39, citing *Galloway v. Khan*, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 8.

{¶ 17} In this case, a review of the decision/entry-decree of divorce shows that it fails to clearly indicate that the factors enumerated under R.C. 3105.171(F) were considered prior to the determination of property division relating to the marital debt was made. Nor does the decision/entry-decree of divorce include any written findings of fact supporting the trial court's determination that the marital debt has been equitably divided. Specifically, it completely fails to explain in any way why it found that all of the parties' credit card debt is marital debt, but then allocated all of it to Robert. (*See* Mar. 19, 2021 Decision/Entry-Decree of Divorce at 16.) Such an unequal division of the marital debt is improper without any kind of explanation or justification by the trial court as to why such a division might nevertheless be equitable. Additionally, the trial court failed to allocate or even identify the Chase credit card debt which was entered into evidence at trial. (Apr. 23, 2021 Def.'s Ex. C.) Therefore, the trial court abused its discretion in its division of the parties' marital debt.

{¶ 18} Accordingly, based on the foregoing, Robert's first and second assignments of error are sustained.

### C. Assignments of Error Three and Six

**{¶ 19}** Assignments of error three and six are interrelated in that both pertain to the parties' stipulation related to personal property that was in Sharon's possession and control and the parties' joint waiver regarding same. We therefore address them together. In his third assignment of error, Robert asserts the trial court erred in allocating all personal property located in the PODS and storage units to Sharon contrary to the parties' in-court stipulation. In his sixth assignment of error, Robert asserts the trial court abused its discretion and therefore erred in finding that the parties waived valuation of all personal property; that the parties waived their rights to written findings of fact; and that the parties agreed that the distribution of personal property, while if not precisely equal, is in fact equitable and in accord with their agreed stipulation. We find both assignments of error have merit.

**{¶ 20}** "It is error for a court to disregard the stipulations of the parties and to decide a civil case on a matter agreed by the parties not to be in dispute, unless there is some fundamental reason in the interest of justice to do otherwise." *Sears Roebuck Co. v. J-Z Realty Co.*, 10th Dist. No. 76AP-332, 1976 Ohio App. LEXIS 7709, *4 (Nov. 2, 1976), unreported. *Accord*, *Am. Logistics Group, Inc. v. Weinpert*, 8th Dist. No. 85041, 2005-Ohio-4809, ¶ 8; *Citizens for Choice v. Summit Cty. Council*, 143 Ohio App.3d 823, 833 (9th Dist.2001); *Gregory v. Kottman-Gregory*, 12th Dist. No. CA2004-11-039, 2005-Ohio-6558, ¶ 46. Only where the parties' stipulations contradict the evidence presented in a case is the trial court not obligated to honor the stipulations made. *Citizens for Choice* at 833.

**{¶ 21}** Here, a review of the transcript shows that at trial, counsel for Robert stated, "Your Honor, we would stipulate any items that are in [Sharon's] possession or control right now are hers, and we would waive any valuation that she would need to testify as to the value of those." (Dec. 7, 2020 Tr. at 102.) The trial court repeated the stipulation on the record, and the trial court correctly set forth the stipulation within the decision/entry-decree of divorce at page three. However, the trial court later stated in the decision/entry-decree of divorce that "[t]he Parties stipulated that [Sharon] is awarded all household goods and furnishings in her custody and control, *including all property in the storage units and PODS* free and clear from any claim by [Robert]. (Emphasis added.) (Decision/Entry-

Decree of Divorce at 12.) This finding is both a misstatement of the parties' stipulation and is also contrary to the evidence presented at trial.

{¶ 22} At trial, testimony showed that Sharon had two storage units and Robert had two storage units. In addition, testimony showed the parties had a total of three PODS, one of which contained personal property of Sharon and two of which contained personal property of Robert. Thus, the trial court should have ordered a personal property division consistent with the parties' in-court stipulation and the evidence presented at trial, i.e., Sharon was entitled to the personal property in her two storage units and her one POD. Neither the evidence nor the parties' in-court stipulation supports the trial court's determination that Sharon should be awarded all the property in the storage units and PODS.

{¶ 23} Likewise, regarding the parties' waiver as it related to personal property, it is clear the parties' stipulation was limited to the personal property that was in Sharon's possession and control, and the parties' waived only valuation of personal property in Sharon's possession and control. Contrary to the trial court's statement in the decision/entry-decree of divorce, neither the evidence nor the parties' in-court stipulation supports the finding that the parties "waive their rights to written findings of fact as otherwise required pursuant to Ohio Revised Code Section 3105.171(B) and (G)," and "agree that the distribution of personal property, while if not precisely equal, is in fact equitable and in accord with their agreed stipulation." (Decision/Entry-Decree of Divorce at 17-18.) Such a determination is contrary to the parties' stipulation and the evidence presented at trial and is an abuse of discretion by the trial court.

{¶ 24} Accordingly, based on the foregoing, Robert's third and sixth assignments of error are sustained.

### D. Assignment of Error Four

{¶ 25} In his fourth assignment of error, Robert asserts the trial court erred in finding that all retirement accounts accumulated during the marriage because the Lucent pension contained separate property and should be divided utilizing a coverture fraction. We agree.

{¶ 26} As previously stated under our discussion of assignments of error one and two, in divorce proceedings, a trial court must divide marital property and debt equally or, if an equal division is inequitable, equitably. *Lindsey v. Lindsey*, 10th Dist. No. 15AP-733, 2016-Ohio-4642, ¶ 5. It is axiomatic that marital property does not include separate property. R.C. 3105.171(A)(3)(b). Separate property is statutorily defined in R.C. 3105.171(A)(6). Specifically, R.C. 3105.171(A)(6)(a)(ii) defines separate property in relevant part as follows:

> "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
>
> (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage.

Under R.C. 3105.171(A)(6)(b), the commingling of separate property with any other type of property does not destroy its identity, unless the separate property is not traceable.

{¶ 27} Marital property is statutorily defined in R.C. 3105.171(A)(3). Specifically, R.C. 3105.171(A)(3)(a)(i) and (ii) defines marital property in relevant part as follows:

> "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
>
> (i) All real and personal property that currently is owned by either or both of the spouses, * * * and that was acquired by either or both of the spouses during the marriage;
>
> (ii) All interest that either or both of the spouses currently has in any real or personal property, * * * and that was acquired by either or both of the spouses during the marriage.

{¶ 28} "When parties contest whether an asset is marital or separate property, the asset is presumed marital property unless it is proven otherwise." *Lindsey*, 2016-Ohio-4642 at ¶ 13, citing *Dach v. Homewood*, 10th Dist. No. 14AP-502, 2015-Ohio-4191, ¶ 33. The burden is on the spouse seeking to have certain property declared separate property to prove the property is separate, not marital property. *Id.*, citing *Alderman v. Alderman*, 10th Dist. No. 10AP-1037, 2011-Ohio-3928, ¶ 23. "This requires showing by a preponderance of the evidence that one of the R.C. 3105.171(A)(6)(a) 'separate property'

definitions applies to the asset." *Hetzner v. Hetzner*, 10th Dist. No. 23AP-176, 2023-Ohio-3951, ¶ 13, citing *Beagle*, 2008-Ohio-764 at ¶ 23. "The characterization of property as marital or separate is a factual issue and is therefore reviewed under the manifest weight of the evidence standard." *Lindsey*, 2016-Ohio-4642 at ¶ 13. Accordingly, the trial court's classification of property will not be reversed if it is supported by some competent, credible evidence. *Id.*

{¶ 29} "Pension or retirement benefits *accumulated during the course of a marriage* are marital assets subject to property division in a divorce action." (Emphasis added.) *Erb v. Erb*, 75 Ohio St.3d 18, 20 (1996), citing *Holcomb v. Holcomb*, 44 Ohio St. 3d 128, 132 (1989); *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178 (1990); R.C. 3105.171(A)(3)(a)(i). "When distributing these marital assets, a trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." *Id.*, citing *Hoyt*, 53 Ohio St.3d at 177.

{¶ 30} In this case, the trial court found that "[a]ll retirement accounts were accumulated during the marriage." (Decision/Entry-Decree of Divorce at 14.) Robert argues this finding is contrary to the manifest weight of the evidence because it is uncontroverted that he was employed by Lucent beginning in approximately 1973, some 15 years prior to the parties' marriage on July 30, 1988. We agree with this contention. Because Robert had worked for Lucent some 15 years prior to the marriage, Sharon was entitled only to a proportionate share of the Lucent pension as a marital asset, *i.e.*, that which was earned during the course of the marriage. *See Hoyt*, 53 Ohio St.3d at 183 (because the value of the marital asset should have been calculated by the ratio of the number of years of employed spouse's employment during the marriage to the total number of years of his or her employment, the trial court erred when it awarded non-employee spouse a fifty-percent share of the pension plan without explanation as to why nonmarital assets were included in the division of property). Therefore, it was error for the trial court to find that all retirement accounts were accumulated during the marriage and award Sharon a 50 percent share of the Lucent pension payment.

{¶ 31} Accordingly, Robert's fourth assignment of error is sustained.

### E.  Assignment of Error Five

{¶ 32} Finally, in Robert's fifth assignment of error, he asserts the trial court erred in failing to establish a de facto termination date of marriage of September 30, 2020 for purposes of property division.  We disagree.

{¶ 33} When determining the date of the termination of the parties' marriage for purposes of calculating a division of marital property, R.C. 3105.171(A)(2) provides:

> "During the marriage" means whichever of the following is applicable:
>
> (a)  Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
>
> (b)  *If* the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court *may* select dates that it considers equitable in determining marital property.  If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

(Emphasis added.)  Thus, pursuant to R.C. 3105.171(A)(2)(a), for purposes of property valuation, the date of termination of the marriage is presumed to be the date of the final hearing.  *Fernando v. Fernando*, 10th Dist. No. 16AP-788, 2017-Ohio-9323, ¶ 10.  Pursuant to R.C. 3105.171(A)(2)(b), however, "a trial court is authorized, in the exercise of its sound discretion,  to utilize a de facto date of termination of the marriage if such is equitable in a particular case."  *Kramer v. Kramer*, 10th Dist. No. 18AP-933, 2019-Ohio-4865, ¶ 16, citing *Mantle v. Sterry*, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 10.   " '[A] court's determination as to when to apply a de facto termination date of a marriage falls well within the broad discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.' "  *Id.*, quoting *Grody v. Grody*, 10th Dist. No. 07AP-690, 2008-Ohio-4682, ¶ 8, citing *Heyman v. Heyman*, 10th Dist. No. 05AP-475, 2006-Ohio-1345, ¶ 32.  As set forth above, an abuse of discretion " 'implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' "  *Johnson*, 2021-Ohio-3304 at ¶ 35, quoting *Black's Law Dictionary* 11 (2d Ed.1910).

{¶ 34} "As a general rule, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, and continually maintain separate residences, separate business activities, and separate bank accounts." *Kramer* at ¶ 16, citing *Mantle* at ¶ 13. The court is not required, however, "to engage in a side-by-side comparison of the pre-separation and post-separation arrangements of the parties. The applicable case law simply requires the trial court to consider all facts relevant to the issue of whether the parties' marriage was irretrievably broken at some point in time prior to the final hearing date." *Mantle* at ¶ 13. Furthermore, as this court observed in *Mantle,* the Supreme Court of Ohio has been clear that " 'the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review.' " *Mantle* at ¶ 11, quoting *Berish*, 69 Ohio St.2d at 319-20.

{¶ 35} In this case, the date of the final hearing was December 7, 2020 and thus the presumed termination date. The trial court determined that "[t]he duration of the marriage is defined from the date of the Parties' marriage, July 30, 1988 to date of trial, December 7, 2020." (Decision/Entry-Decree of Divorce at 17.) Nevertheless, Robert argues that the court should have adopted a de facto termination date of September 30, 2020 instead of December 7, 2020 because the parties stipulated September 30, 2020 was the date they separated and further, because that was the date they moved out of the marital residence.

{¶ 36} Although we agree it is apparent from the record in this case that the parties had no intention of reconciling prior to the final hearing, under an abuse of discretion standard, the court certainly had wide latitude to decline to adopt a de facto termination date that was a mere two months and seven days prior to the final hearing simply because that was the date the parties moved out of the marital residence. Nor was the trial court bound by the parties' stipulated date of separation in declining to adopt a de facto termination date prior to the date of the final hearing. Although we note the trial court's entry and decree is bereft of any analysis of this particular issue, in light of the evidence in the record, we cannot say the trial court failed to properly weigh such evidence in declining to adopt a de facto marriage termination date.

**{¶ 37}** Furthermore, we do not find that the trial court's determination to use the presumptive date of the final hearing as the marriage termination date resulted in any inequitableness related to marital property valuation to either of the parties. Notably, Robert has neither argued that any such inequitableness has resulted in this case, nor specifically identified any such inequitableness. Instead, he merely asserts "[t]he retirement divisions and other property valuation effective dates should be from the date of marriage until September 30, 2020." (Appellee-Cross Appellant Brief at 19.) Therefore, we find the trial court did not abuse its discretion in declining to adopt a de facto termination date that was different from the date of the final hearing.

**{¶ 38}** Accordingly, Robert's fifth assignment of error is overruled.

## IV. Disposition

**{¶ 39}** Having overruled Robert's fifth assignment of error but having sustained Robert's first, second, third, fourth, and sixth assignments of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and we remand the matter for further proceedings consistent with this decision.

*Judgment affirmed in part,*
*reversed in part; cause remanded.*

DORRIAN and EDELSTEIN, JJ., concur.

———————————